772 P.2d 373

**Austin SMITH and Janie Smith, individually and as Co–Personal Representatives of their deceased daughter, Ebony L. Smith, Plaintiffs–Appellants,**

v.

**CITY OF ARTESIA, Artesia Police Department, Mayor Ernest Thompson, James MacKenzie, individually and in his official capacity as Chief of Police, Harry Wesson, individually and in his official capacity, and Woody Wright, individually and in his official capacity, Defendants–Appellees.**

**No. 10094.**

Court of Appeals of New Mexico.

March 2, 1989.

Certiorari Denied April 11, 1989.

Kevin J. Hanratty, Kevin J. Hanratty, P.C., Artesia, for plaintiffs-appellants.

Richard E. Olson, James M. Hudson, Hinkle, Cox, Eaton, Coffield & Hensley, Roswell, Ernest L. Carroll, Losee & Carson, P.A., Artesia, for defendants-appellees.

OPINION

HARTZ, Judge.

Plaintiffs appeal the district court's dismissal of their complaint for failure to state a claim upon which relief can be granted against the city of Artesia, the police department, two members of the police department, the chief of police, and the mayor. The complaint alleges that members of the Artesia Police Department improperly circulated photographs of the nude body of Ebony L. Smith taken during the investigation of her murder. Plaintiffs,

the parents of Ebony L. Smith, sue individually and as co-personal representatives of their daughter. Plaintiffs contend on appeal that their complaint states claims under the Federal Civil Rights Act, 42 U.S.C. Section 1983 (1982),[1] for violation of the constitutional protections against governmental invasion of privacy and against governmental misconduct that shocks the conscience.[2]

First, we hold that plaintiffs can assert no claim on behalf of the decedent in their capacity as her personal representatives. Then, after noting the great weight of authority saying that the *common law* would not provide plaintiffs with a claim for invasion of their own privacy under the facts of this case, we find that the *United States Constitution* also does not provide them with a cause of action for invasion of privacy. Finally, we hold that the shocks-the-conscience doctrine does not apply to the circumstances alleged by plaintiffs.

## A. The Claim on Behalf of the Decedent

■ Plaintiffs' claims in their capacity as personal representatives of their deceased daughter are founded on alleged violations of their daughter's civil rights. The claims fail because the alleged indignities to Ebony L. Smith occurred after her death. "[T]he civil rights of a person cannot be violated once that person has died." *Silkwood v. Kerr–McGee Corp.*, 637 F.2d 743, 749 (10th Cir.1980), *cert. denied*, 454 U.S. 833, 102 S.Ct. 132, 70 L.Ed.2d 111 (1981). *See Guyton v. Phillips*, 606 F.2d 248, 250 (9th Cir.1979), *cert. denied*, 445 U.S. 916, 100 S.Ct. 1276, 63 L.Ed.2d 600 (1980).

## B. The Claim of Invasion of Plaintiffs' Own Constitutional Right to Privacy

We assume, without deciding, that a living person may have a claim for violation of a constitutional right to privacy if police officers improperly publicize a nude photograph of the person. *See Slayton v. Willingham*, 726 F.2d 631 (10th Cir.1984); *York v. Story*, 324 F.2d 450 (9th Cir.1963), *cert. denied*, 376 U.S. 939, 84 S.Ct. 794, 11 L.Ed.2d 659 (1964). The question here, however, concerns the rights of a person with respect to pictures taken of *another* person after the other person is dead.

### 1. The Common Law Right to Privacy

A review of the scope of the common law right to privacy, although not determinative of the constitutional right, can inform our understanding of the concept of privacy and thereby assist us in evaluating plaintiffs' constitutional claim.

The *Restatement (Second) of Torts* Section 652A (1977) has recognized four types of invasions of the right of privacy: unreasonable intrusion upon the seclusion of another, appropriation of another's name or likeness for one's own use or benefit, publicity that unreasonably places another in a false light before the public, and unreason-

---

1. "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State * * * subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

2. Plaintiffs have abandoned the claim in their complaint under the New Mexico Tort Claims Act, NMSA 1978, Sections 41–4–1 to –29 (Repl. 1986 & Cum.Supp.1988). The two main headings in the argument sections of their brief on appeal bear the titles: "POINT I. PLAINTIFFS STATE A CLAIM FOR RELIEF UNDER 42 U.S. C. § 1983" and "POINT II. THE SUPERVISORY OFFICIALS AND THE CITY ARE LIABLE UNDER § 1983." Plaintiffs' brief notes that the district court dismissed their common law claim for invasion of privacy on the ground that the Tort Claims Act confers immunity on defendants; yet the brief does not argue that there was no immunity. Although defendants filed an answer brief which addressed the claim under the Tort Claims Act, plaintiffs filed no reply brief. Issues not briefed are abandoned. *State v. Doe*, 93 N.M. 621, 603 P.2d 731 (Ct.App. 1979). In any event, although we do not decide the issue, plaintiffs' concession appears well-founded. Section 41-4-4 of the Tort Claims Act, which exempts from sovereign immunity certain listed torts committed by law enforcement officers, does not include invasion of a common law right of privacy within the list. Also, even if there were no sovereign immunity, the great weight of authority, as discussed below, would not allow a common law cause of action for invasion of privacy in the circumstances of this case.

able publicity given to one's private life (the invasion alleged in this case). *See McNutt v. New Mexico State Tribune Co.,* 88 N.M. 162, 166, 538 P.2d 804, 808 (Ct. App.1975). The *Restatement, supra,* would not, however, permit plaintiffs' claim based on the photographs of their daughter. The cause of action for unreasonable publicity concerning one's private life belongs solely to the one who was the subject of the publicity. *Restatement, supra,* Section 652I states: "Except for the appropriation of one's name or likeness, an action for invasion of privacy can be maintained only by a living individual whose privacy is invaded." Comment a to that section explains:

> The right protected by the action for invasion of privacy is a personal right, peculiar to the individual whose privacy is invaded. The cause of action is not assignable, and it cannot be maintained by other persons such as members of the individual's family, unless their own privacy is invaded along with his.

*See Gruschus v. Curtis Publishing Co.,* 342 F.2d 775 (10th Cir.1965) (affirming dismissal of complaint by Judge Bratton in diversity case applying New Mexico law; children have no claim for violation of privacy caused by publication concerning deceased father because children's privacy not invaded).

Isolated commentary supports a cause of action for the relatives of a decedent whose private life is publicized. *E.g.,* Green, *Relational Interests,* 29 Ill.L.Rev. 460, 485–490 (1934). Yet judicial concerns about framing the scope of the tort and its possible misuse, as well as traditional reluctance to permit damages that are solely emotional, have outweighed natural revulsion to abuse of the dead. *See Justice v. Belo Broadcasting Corp.,* 472 F.Supp. 145, 147–148 (N.D.Tex.1979). The great weight of judicial authority is against granting relatives of a decedent a cause of action for invasion of privacy arising from disclosures about the decedent. *See* Annotation, *Invasion of Privacy by Publication Dealing With One Other Than Plaintiff,* 18 A.L. R.3d 873 (1968); *Cordell v. Detective Publications, Inc.,* 419 F.2d 989 (6th Cir.1969);

*Moore v. Charles B. Pierce Film Enters., Inc.,* 589 S.W.2d 489 (Tex.Civ.App.1979, writ ref'd n.r.e.); Reporter's Note to *Restatement, supra,* § 652I. Even the statutes sometimes cited as granting a "relational right of privacy" to the relatives of the deceased are similar to *Restatement, supra,* Section 652I in that they limit the relatives' cause of action to commercial exploitation of the identity of the decedent. *See* Fla.Stat. § 540.08 (1987); Neb.Rev. Stat. § 20–208 (1987); 21 Okla.Stat.Ann. § 839.1 (West 1981); 8B Utah Code Ann. §§ 76–9–405 & –406 (1978 ed.) (§ 76–9–405 repealed 1981); 4 Va.Code Ann. § 18.2–216.1 (Repl.Vol.1988).

We also note that no special rule provides relatives a right of privacy in the body of a deceased person. Although New Mexico has granted relatives of a decedent a cause of action for mistreatment of a corpse, the tort is a limited one, derived from the common law notion of " 'a quasi-property right in a dead body vesting in the nearest relatives of the deceased and arising out of their duty to bury their dead.' " *Infield v. Cope,* 58 N.M. 308, 312, 270 P.2d 716, 719 (1954) (quoting 15 Am.Jur. *Dead Bodies* § 6, at 831). *Restatement, supra,* Section 868 (1979) describes the tort as follows: "One who intentionally, recklessly or negligently removes, withholds, mutilates or operates upon the body of a dead person or prevents its proper interment or cremation is subject to liability to a member of the family of the deceased who is entitled to the disposition of the body." Thus, the cause of action is confined to physical abuse of the body, which is not involved in this case.

## 2. *The Constitutional Right to Privacy*

■ The United States Supreme Court's concept of the constitutional right to privacy differs somewhat from the common law concept described in the *Restatement, supra,* Section 652A. *Whalen v. Roe,* 429 U.S. 589, 598, 97 S.Ct. 869, 875–76, 51 L.Ed. 2d 64 (1977) identified two kinds of privacy interests: (1) "avoiding disclosure of personal matters," and (2) "independence in making certain kinds of important deci-

sions." (Footnotes omitted.) The second interest, which is not implicated in this case, incorporates a notion of autonomy that has no counterpart in the common law right of privacy. The first interest, however, closely resembles—and may be identical to—the interest protected by the common law prohibition against unreasonable publicity given to one's private life. *See Restatement, supra,* § 652A(2)(c). Therefore, in the context of this case we would expect the constitutional right to be no broader than the common law right. In particular, we would expect that one's constitutional right to privacy does not extend to disclosures concerning another person.

Indeed, both a common sense understanding of privacy and precedent of the United States Supreme Court argue against recognition of a privacy interest in another person. Privacy is inherently personal. The right to privacy recognizes the sovereignty of the *individual.* The notion of privacy as an expression of individual sovereignty underlies the proposition that the constitutional right to privacy finds support in the ninth amendment to the Constitution, which provides that "[t]he enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people." *See Griswold v. Connecticut,* 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965) (majority opinion and concurrence of Justice Goldberg). It is inconsistent with this notion to speak of a privacy interest in another individual. In *Eisenstadt v. Baird,* 405 U.S. 438, 453, 92 S.Ct. 1029, 1038, 31 L.Ed.2d 349 (1972) (invalidating statute regulating contraceptives), the United States Supreme Court wrote:

> [T]he marital couple is not an independent entity with a mind and heart of its own, but an association of two individuals each with a separate intellectual and emotional makeup. If the right of privacy means anything, it is the right of the *individual,* married or single, to be free from unwarranted governmental intrusion into matters so fundamentally affecting a person as the decision whether to bear or beget a child. [Emphasis in original.]

*Accord Planned Parenthood of Cent., Mo. v. Danforth,* 428 U.S. 52, 70 n. 11, 96 S.Ct. 2831, 2841 n. 11, 49 L.Ed.2d 788 (1976) (abortion case). This analysis of privacy as an individual right, not the right of any entity, even a married couple, is independent of whether or not there is a constitutional right to an abortion or the use of contraceptives.

We affirm the district court's dismissal of plaintiffs' claim that defendants violated their constitutional right to privacy.

## C. The Claim of Misconduct that Shocks the Conscience

Plaintiffs claim in the alternative that they are entitled to relief because the alleged conduct by the defendants "shocks the conscience." Such conduct may be prohibited by the fourteenth amendment to the United States Constitution, which provides, "nor shall any State deprive any person of * * * liberty * * * without due process of law." *See Rochin v. California,* 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952).

Courts have applied the shocks-the-conscience test to provide a remedy under Section 1983 for use of excessive force by law enforcement officers, although "the constitutional protection is nowhere nearly so extensive as that afforded by the common law tort action for battery." *Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir.), *cert. denied sub nom. Employee–Officer John v. Johnson,* 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973). Such cases support an interpretation of *Rochin* as recognizing a constitutionally protected liberty interest in "freedom from bodily restraint and punishment." *Ingraham v. Wright,* 430 U.S. 651, 673–674, 97 S.Ct. 1401, 1413–1414, 51 L.Ed.2d 711 (1977) (punishment of child by school authorities). *See Garcia v. Miera,* 817 F.2d 650 (10th Cir.1987), *cert. denied,* 485 U.S. 959, 108 S.Ct. 1220, 99 L.Ed.2d 421 (1988).

Plaintiffs rely on *White v. Rochford,* 592 F.2d 381 (7th Cir.1979), which found a violation of Section 1983 under the shocks-the-conscience test when officers arrested a driver and left three young children unattended in his car on a cold night on an eight-lane freeway that the children needed

to cross to obtain assistance. One of the two judges composing the majority in *White* spoke of the "individual's right to be free from unjustified intrusions upon physical and *emotional* well-being." *Id.* at 386 (emphasis added). The separate opinion of the other judge in the majority focused, however, on the violation of the children's interest in personal security. *Id.* at 386–388.

Thus, the pertinent case law suggests that the liberty interest protected by the shocks-the-conscience doctrine encompasses only personal physical security. Plaintiffs do not state a Section 1983 claim under that doctrine because they allege no injury to such an interest.

*Conclusion*

Our holding should not be read as approval, or even condonation, of the conduct alleged by plaintiffs. In a recent decision construing Section 1983 the United States Supreme Court recalled "Chief Justice Marshall's admonition that 'we must never forget, that it is *a constitution* we are expounding,' *McCulloch v. Maryland*, 17 U.S. 316, 4 Wheat. 316, 407, 4 L.Ed. 579 (1819) (emphasis in original)." *Daniels v. Williams*, 474 U.S. 327, 332, 106 S.Ct. 662, 665, 88 L.Ed.2d 662 (1986). The Court pointed out that it is no reflection on the importance of traditional tort law to say that certain tortious conduct by governmental officials may not violate the Constitution. *Id.* at 333, 106 S.Ct. at 666. *See Wells v. County of Valencia*, 98 N.M. 3, 644 P.2d 517 (1982). We hold only that plaintiffs have not alleged a violation of their constitutional rights.

We affirm the decision of the district court. Oral argument is unnecessary. The parties shall bear their own costs on appeal.

IT IS SO ORDERED.

DONNELLY and ALARID, JJ., concur.