[Nos. 65130-2; 65390-9; 65611-8; 65985-1; En Banc.] 65982-6.

Argued May 27, 1998.     Decided September 3, 1998.

KAREN REID, ET AL., *Appellants*, v. PIERCE COUNTY, ET AL., *Respondents*.

CYNTHIA HYDE-LUCAS, ET AL., *Appellants*, v. PIERCE COUNTY, ET AL., *Respondents*.

JACQUIE HYDE, *Individually and as Representative, Appellant*, v. PIERCE COUNTY, ET AL., *Respondents*.

BETTY V. VAUGHAN, *Appellant*, v. PIERCE COUNTY, ET AL., *Respondents*.

VIOLET YARBROUGH, *Individually and as Representative*, ET AL., *Appellants*, v. PIERCE COUNTY, ET AL., *Respondents*.

*Luvera, Barnett, Brindley, Beninger & Cunningham*, by *Joel B. Cunningham, Ralph J. Brindley*, and *David M Beninger*; and *Law Offices of Judith A. Lonnquist, P.S.*, by *Judith A. Lonnquist* and *Sevilla Claydon*, for appellants.

*Paul A. Lindenmuth*; and *Burgess, Fitzer, Leighton & Phillips, P.S.*, by *John Ladenburg, Jr.*, and *F. Ross Burgess*, for respondents.

*Jeffrey L. Needle* on behalf of American Civil Liberties Union, amicus curiae.

JOHNSON, J. — In these consolidated cases, we are asked

to decide whether Plaintiffs may maintain a cause of action against Pierce County (County) and its employees for appropriating and displaying to others photographs of corpses of Plaintiffs' deceased relatives. Plaintiffs allege negligent infliction of emotional distress, tort of outrage, violation of their rights of privacy guaranteed by the state constitution, and common law invasion of privacy. We hold the Plaintiffs may maintain an action for common law invasion of privacy and reverse the trial court's order of summary judgment entered against them on that issue.

We decline to hold, however, that any of the Plaintiffs have colorable claims for negligent infliction of emotional distress, tort of outrage, or violation of their constitutional rights of privacy under article I, section 7 of the Washington Constitution. Insofar as the trial court entered summary judgment for the County or granted the County's motion under CR 12(b)(6) on those claims, we affirm.

## FACTS
### Reid v. Pierce County

Karen Reid is the niece of now-deceased, former Governor Dixie Lee Ray.[1] The Reid complaint alleges that for a period of at least 10 years employees of the Pierce County Medical Examiner's office appropriated autopsy photographs of corpses, showing them at cocktail parties and using them to create personal scrapbooks. Specifically, the Reids allege photographs of former Governor Ray's corpse were personally possessed by Bruell, an employee of the Medical Examiner's office.

The Reids became aware of the appropriation and use of the autopsy photographs through the press. Certain newspapers reported that attorneys for the County used Bruell's appropriation of autopsy photographs against him to obtain a more favorable settlement for the County in an employment discrimination suit.

---

[1]Marion Reid, sister of the former Governor, assigned her claim to Karen Reid.

The Reid complaint alleges the appropriation and use of the autopsy photographs of former Governor Ray subjects the County to liability for tort of outrage, common law invasion of privacy, and violates the Plaintiffs' state and federal constitutional right to privacy. The superior court granted the County's CR 12(b)(6) motion for failure to state a claim upon which relief may be granted.

## *Hyde-Lucas v. Pierce County; Hyde v. Pierce County*

Jacquie Hyde is the widow of former Tacoma Mayor Jack Hyde. Cynthia Hyde-Lucas and Laura Hyde are the former Mayor's daughters. They also brought suit against the County on the same bases asserted by the Reids. Their complaints were dismissed after the County succeeded in obtaining summary judgment against them.

## *Vaughan v. Pierce County*

In the early 1980s, Roberta Vaughan died of an apparent drug overdose. At the time of her death, William Barnes took six Polaroid photographs of Ms. Vaughan at either the scene of her death or at the Medical Examiner's office. These photographs were placed in the Medical Examiner's records and files. After Barnes' employment with the Medical Examiner's office ended, he learned the office was microfilming files and destroying photographs. The Vaughans allege Barnes was given permission to obtain the photographs from cases he worked on, including the six pictures of Roberta Vaughan. Barnes admits he showed those pictures to persons with whom he worked at his new job at Pierce County Public Works. Barnes did not have permission from Betty Vaughan (Roberta's mother) to show the photographs to anyone.

Betty Vaughan sued the County, the Medical Examiner, and Barnes, asserting the County was liable for tort of outrage, common law invasion of privacy, and violation of the Plaintiffs' constitutional right of privacy under the

state and federal constitutions. The superior court granted the County's motion for summary judgment.

## *Yarbrough v. Pierce County*

As a result of an accident with a power tool, Ralph Wilson Roberts died of strangulation. Barnes, the same investigator who investigated the death of Roberta Vaughan, investigated Roberts' death and took photographs of Roberts. Similar to the Vaughan case, Barnes obtained the Roberts photographs after his employment with the Medical Examiner's office ended and during his tenure with Pierce County Public Works.

Violet Yarbrough, Roberts' widow, alleges that for approximately eight years after Barnes obtained the autopsy photographs, he discussed postmortem details of Roberts' death and shared the autopsy photographs with others. The photographs were marked with Roberts' name and Barnes did not remove the deceased's name when showing the photographs to friends and coworkers. Yarbrough also alleges Barnes made copies of the photographs and displayed those copies in classes he taught on road safety. Barnes admits he did this. Like the Vaughan case, Barnes never asked Roberts' family for permission to display the photographs or discuss the postmortem details of Roberts' death. Summary judgment was entered in favor of the County.

We granted all of the Plaintiffs' petitions for review and consolidated the cases because they present highly similar issues.

## ANALYSIS

■■ Plaintiffs' claims in these cases were either dismissed under CR 12(b)(6)[2] or summary judgment was granted in favor of the County. Dismissal of a claim under

---

[2]CR 12(b)(6) provides: "Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross claim, or third party claim, shall be asserted in the responsive pleading thereto if one is required, except that

CR 12(b)(6) is reviewed de novo and is appropriate only if "it appears beyond a reasonable doubt that no facts exist that would justify recovery." *Cutler v. Phillips Petroleum Co.*, 124 Wn.2d 749, 755, 881 P.2d 216 (1994). Furthermore, we accept as true the allegations in a plaintiff's complaint and any reasonable inferences therein. *See Chambers-Castanes v. King County*, 100 Wn.2d 275, 278, 669 P.2d 451, 39 A.L.R.4TH 671 (1983); *Corrigal v. Ball & Dodd Funeral Home, Inc.*, 89 Wn.2d 959, 961, 577 P.2d 580 (1978).

In reviewing an order of summary judgment, we engage in the same inquiry as the trial court. The motion for summary judgment should be granted only if the pleadings, affidavits, depositions, and admissions on file demonstrate there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. We consider the facts in a light most favorable to the nonmoving party. *See Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982). In this case, the nonmoving parties are the Plaintiffs.

### Tort of Outrage and Negligent Infliction of Emotional Distress

Plaintiffs Hyde and Yarbrough allege tort of outrage and negligent infliction of emotional distress.[3] Summary judgment was granted in favor of the County and Plaintiffs Hyde and Yarbrough seek review of the superior court's determination of these issues.

#### A. Outrage

Outrageous conduct is conduct "which the recitation of the facts to an average member of the community would arouse his resentment against the actor and lead him to

the following defenses may at the option of the pleader be made by motion: . . . (6) failure to state a claim upon which relief can be granted . . . ."

[3]In their briefs to this court, Plaintiffs Hyde and Yarbrough combine their arguments on tort of outrage and negligent infliction of emotional distress into one section (trial court erred by dismissing the parties' outrage and negligent infliction of emotional distress claims (hereinafter "negligent infliction")).

exclaim 'Outrageous!' " *Browning v. Slenderella Sys.*, 54 Wn.2d 440, 448, 341 P.2d 859 (1959) (quoting RESTATEMENT OF TORTS § 46(g) (Supp. 1948)). *See also Dunn v. Moto Photo, Inc.*, 828 S.W.2d 747, 753 (Tenn. Ct. App. 1991). That, however, is not the test for a tort of outrage claim. To establish a tort of outrage claim, a plaintiff must show (1) extreme and outrageous conduct, (2) intentional or reckless infliction of emotional distress, and (3) severe emotional distress on the part of the plaintiff. *Dicomes v. State*, 113 Wn.2d 612, 630, 782 P.2d 1002 (1989) (citing *Rice v. Janovich*, 109 Wn.2d 48, 61, 742 P.2d 1230 (1987)). In *Grimsby v. Samson*, 85 Wn.2d 52, 530 P.2d 291, 77 A.L.R.3D 436 (1975), we described what is required by these three elements:

> First, the emotional distress must be inflicted *intentionally or recklessly*; mere negligence is not enough. Second, the conduct of the defendant must be *outrageous and extreme. . . .* Liability exists "only where the conduct has been *so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.*" (Italics ours.) . . . Clearly, a case-by-case approach will be necessary to define the precise limits of such conduct. Nevertheless, among the factors a jury or court should consider are the position occupied by the defendant (comment *e*), whether plaintiff was peculiarly susceptible to emotional distress and defendant's knowledge of this fact (comment *f*), and whether defendant's conduct may have been privileged under the circumstances (comment *g*).
>
> Third, the conduct must result in *severe emotional distress* to the plaintiff (comment *j*). Resulting bodily harm would, of course, be an indication of severe emotional distress, but a showing of bodily harm is not necessary. Fourth, the plaintiff must be an *immediate family member* of the person who is the object of the defendant's actions, and he must be *present at the time of such conduct* (comment *l*).

*Grimsby*, 85 Wn.2d at 59-60 (citing RESTATEMENT (SECOND) OF TORTS § 46 (1965) and comments thereto).

Plaintiffs Hyde and Yarbrough concede they were not

present when County employees appropriated and displayed photographs of the corpses of their deceased relatives. They argue, however, that the "presence" element is inapplicable because the actions of the County employees were directed toward them. Plaintiffs Hyde and Yarbrough ask us to "reconsider whether the benefits of the 'presence' element outweigh the cost of denying [Plaintiffs'] claim," Br. of Appellant (Yarbrough) at 47, and assert we should "recognize an exception to the presence requirement for cases where the Defendants used deceptive and unconscionable means to preclude the third party's presence." Br. of Appellant (Yarbrough) at 48-49.

The County argues the presence element is required at all times and because Plaintiffs were not present during any of the conduct, summary judgment was appropriate. The County relies on our previous decisions in *Schurk v. Christensen*, 80 Wn.2d 652, 497 P.2d 937 (1972) and *Lund v. Caple*, 100 Wn.2d 739, 675 P.2d 226 (1984), where we affirmed the presence requirement. We agree with the County and hold that because Plaintiffs Hyde and Yarbrough were not present when the conduct occurred, they may not maintain tort of outrage actions.

In *Schurk*, we held a mother could not maintain a tort of outrage action as a result of the molestation of her daughter, in part because "the mother was not near the scene of the molestations; she did not observe these injuries occurring to her daughter, and learned of the occurrences at a later date from a third person." *Schurk*, 80 Wn.2d at 656-57. In *Lund*, we affirmed the dismissal of the plaintiff's tort of outrage complaint based on a sexual relationship between plaintiff's wife and the pastor of the church the plaintiff and his wife attended. In affirming summary judgment for the defendant, we stated, "[t]he fatal flaw in appellant's outrage theory is that he was not present when the alleged outrageous conduct occurred, and did not even learn of the conduct until several months later. *Since appellant was not present, he has not established the tort of outrage.*" *Lund*, 100 Wn.2d at 742 (emphasis added).

While the conduct complained of in the cases before us is the type that would cause a reasonable person to exclaim, "outrageous," Plaintiffs Hyde and Yarbrough were simply not present when the conduct occurred. Even if we were inclined to find the tort of outrage available to Plaintiffs, we would be required to overlook the presence element. We find no support for such a holding in either the RESTATE-MENT (SECOND) OF TORTS, the comments thereto, as we adopted in *Grimsby*, or our previous cases. As such, we hold summary judgment in favor of the County was proper as to Plaintiffs' claims on the tort of outrage.

B. Negligent Infliction of Emotional Distress

■ Plaintiffs also claim negligent infliction of emotional distress. In *Hunsley v. Giard*, 87 Wn.2d 424, 435-36, 553 P.2d 1096 (1976), we recognized the tort of negligent infliction of emotional distress. Where a plaintiff alleges negligent infliction of emotional distress, his or her claim is tested against the "established concepts of duty, breach, proximate cause, and damage or injury." *Hunsley*, 87 Wn.2d at 434. Similar to the tort of outrage, we have limited recovery for negligent infliction of emotional distress, holding that "mental suffering by a relative who is not present at the scene of the injury-causing event is unforeseeable as a matter of law." *Gain v. Carroll Mill Co.*, 114 Wn.2d 254, 260, 787 P.2d 553 (1990).

Plaintiffs and the County present identical arguments to those discussed in the tort of outrage section above. For the reasons discussed in that section, we hold the trial court properly entered summary judgment in favor of the County. None of the Plaintiffs were present at the scene where the tortious action occurred and, therefore, are not entitled to maintain an action for negligent infliction of emotional distress.

### Common Law Right of Privacy

■ Plaintiffs claim the County is liable for common law invasion of privacy. The County asserts no common law

right of privacy exists in Washington. We find no merit to the County's argument on this point. The RESTATEMENT (SECOND) OF TORTS § 652D (1977) provides the general rule for invasion of privacy.[4] It states:

> One who gives publicity to a matter concerning the private life of another is subject to liability to the other for invasion of his privacy, if the matter publicized is of a kind that
>
> > (a) would be highly offensive to a reasonable person, and
> >
> > (b) is not of legitimate concern to the public.

In *Hearst Corp. v. Hoppe*, 90 Wn.2d 123, 580 P.2d 246 (1978), we indicated that a tort action for invasion of the right of privacy exists in Washington. In that case, a newspaper sought disclosure of property and personal tax records of private citizens in a quest to determine whether the county assessor had given special favors to individuals who contributed to the assessor's successful campaign. We affirmed a superior court order requiring a county assessor to disclose the information. The county assessor had declined to disclose the information sought under RCW 42.17.310(1)(c), which exempts "[i]nformation required of any taxpayer in connection with the assessment or collection of any tax if the disclosure [to such] persons would violate the taxpayer's *right to privacy*[.]" *Hearst Corp.*, 90 Wn.2d at 134 (quoting RCW 42.17.310(1)(c) (emphasis added)). The statute did not, however, define the term "right to privacy." We filled that definition void by adopting the RESTATEMENT (SECOND) OF TORTS § 652(D) as the controlling standard for the statute. In so doing, we stated, "[t]he most applicable privacy right would appear to be that expressed in tort law. Tort liability for invasions of privacy

---

[4]RESTATEMENT (SECOND) OF TORTS § 652H (1977) provides for damages available to one who establishes a cause of action for invasion of privacy: "One who has established a cause of action for invasion of his privacy is entitled to recover damages for

"(a) the harm to his interest in privacy resulting from the invasion;

"(b) his mental distress proved to have been suffered if it is of a kind that normally results from such an invasion; and

"(c) special damage of which the invasion is a legal cause."

by public disclosure of private facts is set forth in Restatement (Second) of Torts § 652D, at 383." *Hearst Corp.*, 90 Wn.2d at 135. After analyzing the actual language of the RESTATEMENT (SECOND) OF TORTS § 652(D), we further stated:

> In addition to the fact that *the tort right is the most widely recognized and established definition of the legal right of privacy*, the context in which that right has emerged and the considerations surrounding its development are uniquely analogous to the values and interests which subsection (1)(c) appears designed to protect [right to privacy].

*Hearst Corp.*, 90 Wn.2d at 136 (emphasis added).

*Hearst* establishes that individuals have a right of privacy, with the RESTATEMENT (SECOND) OF TORTS § 652D (1977) setting out the guiding principles for the tortious invasion of that right. The County disagrees, relying on *Doe v. Group Health Coop., Inc.*, 85 Wn. App. 213, 932 P.2d 178 (1997), a case in which the Court of Appeals affirmed the dismissal of a plaintiff's invasion of privacy claim because the court was "unable to verify [the] assumption" that Washington recognizes the common law cause of action described in RESTATEMENT (SECOND) OF TORTS § 652D (1977). *Doe v. Group Health Coop.*, 85 Wn. App. at 221. The Court of Appeals interpreted our decision in *Hillman v. Star Publ'g Co.*, 64 Wash. 691, 117 P. 594 (1911), as declining to recognize a remedy for "an invasion of the so-called right of privacy." *Doe v. Group Health Coop.*, 85 Wn. App. at 222 (quoting *Hillman*, 64 Wash. at 695). Additionally, the Court of Appeals characterized our opinion in *Mark v. Seattle Times*, 96 Wn.2d 473, 635 P.2d 1081 (1981) as a case in which we "assumed the existence of a cause of action for invasion of privacy" but, nevertheless, did not explicitly abandon *Hillman*. *Doe v. Group Health Coop.*, 85 Wn. App. at 223.

So that no further confusion exists, we explicitly hold the common law right of privacy exists in this state and that individuals may bring a cause of action for invasion of that right. The Court of Appeals' reliance on *Hillman* is

misplaced. In *Brink v. Griffith*, 65 Wn.2d 253, 257-58, 396 P.2d 793 (1964), we explicitly cited *Hillman* for the proposition that we have *not* "expressly rejected such an invasion [of privacy] as a basis for a tort claim." To the extent that *Doe v. Group Health Coop.* implies that invasion of privacy does not exist as a basis for a tort claim in Washington, it is explicitly overruled.

■ Now that we have identified that a common law cause of action for invasion of privacy exists, we must determine whether such cause of action is available to the Plaintiffs in this case. The County argues if any right of privacy was violated it was that of the deceased and not of the relatives of the deceased. The County asserts the general rule is that privacy is a personal interest and may not be brought by a relative of a deceased person. This argument, however, flies in the face of our previous cases, legislation, and memoranda from the County itself.

It is clear that had the County employees physically mutilated or otherwise physically interfered with the corpses of the Plaintiffs' relatives, liability would certainly exist. *See Wright v. Beardsley*, 46 Wash. 16, 20, 89 P. 172 (1907); *Gadbury v. Bleitz*, 133 Wash. 134, 233 P. 299, 44 A.L.R. 425 (1925). However, the County asserts that because the actions here involved photographs only, no harm was done. That argument is one of degree, not of distinction.

The County relies on *Smith v. City of Artesia*, 108 N.M. 339, 772 P.2d 373 (1989), where the New Mexico Court of Appeals addressed a similar issue. There, members of a city police department improperly circulated autopsy photographs of a murder victim. The murder victim's parents sued and the court held:

> The cause of action for unreasonable publicity concerning one's private life belongs solely to the one who was the subject of the publicity. . . .
>
>      . . . .
>
>      . . . Although New Mexico has granted relatives of a

decedent a cause of action for mistreatment of a corpse, the tort is a limited one, derived from the common law notion of " 'a quasi-property right in a dead body vesting in the nearest relatives of the deceased and arising out of their duty to bury their dead.' "

*Smith*, 108 N.M. at 341 (quoting *Infield v. Cope*, 58 N.M. 308, 312, 270 P.2d 716 (1954)). *See also Fitch v. Voit*, 624 So. 2d 542, 543 (Ala. 1993) (decedent's family had no cause of action against newspaper for invasion of privacy after newspaper published photograph depicting decedent, describing her as dying of cancer); *Lambert v. Garlo*, 19 Ohio App. 3d 295, 484 N.E.2d 260 (1985) (relatives of decedent did not have a claim for invasion of privacy against coroner who stated that decedent was a "pusher"); *Swickard v. Wayne County Med. Exam'r*, 438 Mich. 536, 553-54, 475 N.W.2d 304 (1991) (constitutional invasion of privacy rights of family of decedent not implicated where county coroner was compelled to release autopsy report and toxicology results regarding deceased district court judge to newspaper).

Plaintiffs, however, point to other cases where courts have held that family members of decedents have a privacy right in records regarding their deceased relatives. In *Katz v. National Archives & Records Admin.*, 862 F. Supp. 476 (D.D.C. 1994), *aff'd*, 68 F.3d 1438 (1995), the court held:

[T]he Kennedy family has a clear privacy interest in preventing the disclosure of both the x-rays and the optical photographs taken during President Kennedy's autopsy. . . . However, there can be no mistaking that the Kennedy family has been traumatized by the prior publication of the unauthorized records and that further release of the autopsy materials will cause additional anguish. . . .

. . . [T]he Court finds that allowing access to the autopsy photographs would constitute a clearly unwarranted invasion of the Kennedy family's privacy.

*Katz*, 862 F. Supp. at 485-86. *See also Badhwar v. United States Dep't of Air Force*, 829 F.2d 182, 185-86 (D.C. Cir.

1987) (families of deceased aircraft pilots have a privacy interest in autopsy reports); *New York Times Co. v. NASA*, 782 F. Supp. 628 (D.D.C. 1991) (reporter's request to obtain disclosure of tape-recorded voice communications aboard the Challenger space shuttle on date of accident killing seven astronauts denied as unwarranted invasion of the personal privacy of the astronauts' families).

Plaintiffs also rely on *Douglas v. Stokes*, 149 Ky. 506, 149 S.W. 849 (1912), where the Kentucky Supreme Court faced a similar issue. In that case, twin boys born connected at the sternum died shortly after birth. The parents hired a photographer to make 12 pictures of the twins. The photographer made an extra picture and obtained a copyright of that picture from the United States Copyright office. The parents filed suit to recover damages for the photographer's use of the negative, claiming it had been done against their consent and that "by the exposure of the photographs they had been humiliated and their feelings and sensibilities had been wounded." *Douglas*, 149 Ky. at 507. A jury verdict was rendered for the parents and the photographer appealed, claiming the parents had no cause of action against him. In affirming the judgment, the Kentucky Supreme Court stated:

> The photographer had no authority to make the photographs except by [the parents'] authority, and when he exceeded his authority he invaded their right. . . .
>
> The most tender affections of the human heart cluster about the body of one's dead child. A man may recover for any injury or indignity done the body and *it would be a reproach to the law if physical injuries might be recovered for and not those incorporal injuries which would cause much greater suffering and humiliation.* . . .
>
> If the defendant had wrongfully taken possession of the nude body of the plaintiff's dead children and exposed it to public view in an effort to make money out of it, it would not be doubted that an injury had been done them to recover for which an action might be maintained. *When he wrongfully used the photograph of it a like wrong was done; the injury differing from that supposed, in degree but not in kind.*

*Douglas*, 149 Ky. at 509 (emphasis added).

We agree with the Plaintiffs' interpretation of the common law right of privacy and recognize that the cases relied upon by Plaintiffs are more consistent with our own jurisprudence on this issue than those relied upon by the County.

In *Cowles Publ'g Co. v. State Patrol*, 109 Wn.2d 712, 748 P.2d 597 (1988), we identified the nature of facts protected by the right of privacy, stating:

> Every individual has some phases of his life and his activities and some facts about himself that he does not expose to the public eye, but keeps entirely to himself or at most reveals only to his family or to close personal friends. Sexual relations, for example, are normally entirely private matters, as are family quarrels, many unpleasant or disgraceful or humiliating illnesses, most intimate personal letters, most details of a man's life in his home, and some of his past history that he would rather forget. When these intimate details of his life are spread before the public gaze in a manner highly offensive to the ordinary reasonable man, there is an actionable invasion of his privacy, unless the matter is one of legitimate public interest.

*Cowles Publ'g Co.*, 109 Wn.2d at 721 (quoting RESTATEMENT (SECOND) OF TORTS § 652D, at 386 (1977)). *See also Seattle FireFighters Union Local No. 27 v. Hollister*, 48 Wn. App. 129, 135, 737 P.2d 1302 (1987). We fail to see how autopsy photographs of the Plaintiffs' deceased relatives do not constitute intimate details of the Plaintiffs' lives or are not facts Plaintiffs do not wish exposed ''before the public gaze.''

Furthermore, our holding is supported by RCW 68.50.105, which declares a public policy that autopsy records regarding deceased persons remain confidential and distributed only to a select few. That statute states:

> **Autopsies, post mortems—Reports and records confidential—Exceptions.** Reports and records of autopsies or post mortems *shall be confidential*, except that the following persons may examine and obtain copies of any such report or record: The personal representative of the decedent as defined

in RCW 11.02.005, any family member, the attending physician, the prosecuting attorney or law enforcement agencies having jurisdiction, public health officials, or to the department of labor and industries in cases in which it has an interest under RCW 68.50.103.

RCW 68.50.105 (emphasis added). *See State v. Petersen*, 47 Wn.2d 836, 838, 289 P.2d 1013 (1955) (Autopsy reports remain confidential even after they are shared with parties outlined in statute. "If this was not so, then a prosecutor, after obtaining an autopsy report, could *pass it on to others, and the legislative pronouncement that such reports are confidential would be violated.*" (emphasis added)).

In addition to RCW 68.50.105, a November 4, 1994 memorandum from the County to staff of the Medical Examiner's office indicates the County recognized the confidential nature of autopsy reports:

> In the past, we have had a few "prominent" people come to our office that have required an autopsy. Photographs have been taken by employees of these people for "personal" collections. The only photographs that should be taken of individuals are for investigation and autopsy purposes only. Please destroy any photographs that you may be keeping for personal reasons, or place the photo(s) in the case file. Any employee found with these photos in their possession without justification, will be subject to severe disciplinary action.

Clerk's Papers (Hyde-Lucas) at 264.

With those two examples of the confidential nature of autopsy reports in mind, we can conclude only that, by displaying the autopsy photographs, a matter private to the lives of the Plaintiffs was given publicity by the County. In none of the cases relied upon by the County is there mention of a statute analogous to RCW 68.50.105. This statute reflects a public policy identified by the Legislature that records made during an autopsy remain confidential and should be released only to those persons which have a genuine interest in the reports. The County's assertion that Plaintiffs have no privacy interest in the autopsy records is

refuted by RCW 68.50.105, which requires confidentiality, and by the County's own directive to its employees not to appropriate and display autopsy records. To hold, as the County would suggest, that the relatives of a decedent have no cause of action, no matter how egregious the act, is counterintuitive. We conclude, instead, that the relatives of the deceased have a protectable privacy interest.

Our conclusion is supported by *Loft v. Fuller*, 408 So. 2d 619 (Fla. Dist. Ct. App. 1981). There, the Florida Court of Appeals addressed the right of privacy of family members after a book had been published containing certain information regarding one of their deceased relatives. The court recognized that case authority was split on whether the deceased's relatives may recover for invasion of their own privacy interests even though they were not personally the focus of the publicity in question. Although the court determined the plaintiffs could not maintain an action for invasion of privacy because the "appellants have not alleged any independent violation of their own personal privacy rights," *Loft*, 408 So. 2d at 624, the court stated:

> We are wary of a blanket rule barring all relatives of a deceased from bringing a common law invasion of privacy action simply because the relatives were not directly involved in the publicity. However, in our view such relatives must shoulder a heavy burden in establishing a cause of action. When there are unusual circumstances, such as those that were involved in most of the cases which have recognized claims by the relatives, it may be that a defendant's conduct towards a decedent will be found to be sufficiently egregious to give rise to an independent cause of action in favor of members of decedent's immediate family.

*Loft*, 408 So. 2d at 624. We agree.

We hold the immediate relatives of a decedent have a protectable privacy interest in the autopsy records of the decedent. That protectable privacy interest is grounded in maintaining the dignity of the deceased. We also hold the trial court erred in granting the County's CR 12(b)(6) and summary judgment motions on this issue. The County's ac-

tions in these cases are sufficiently egregious to enable the families of the deceased to maintain their own action. Plaintiffs have alleged sufficient facts to require trial on this issue.

## Constitutional Right of Privacy

Plaintiffs assert the County violated their right of privacy under article I, section 7 of the Washington Constitution[5] and, as such, they should be allowed to bring a civil action for damages against the County. Plaintiffs concede no such action under the state constitution is currently recognized but ask us to use this case to create one.[6] Plaintiffs also ask us to hold article Constitution article I, section 7 provides greater protection than its federal counterpart. We decline both requests.

Plaintiffs assert a private right of action for damages "should be created for a violation of the Washington State Constitutional right to privacy, *Art. I § 7.*" Br. of Appellant (Reid) at 9. They further argue if a private action is available under Constitution article I, section 7, it should be extended to the immediate relatives of the deceased.

We feel, at this time, that Plaintiffs may obtain adequate relief under the common law and that such actions are better addressed under the common law invasion of privacy action. Plaintiffs have not presented a reasoned or principled basis upon which to construct a constitutional cause

---

[5]Two of the Plaintiffs, Reid and Hyde-Lucas, brief this issue only on appeal. They assert they are not abandoning their claims under the other potential causes of action (tort of outrage, common law invasion of privacy, federal civil rights violations, negligent supervision). Although they do not brief those issues, the negligent infliction of emotional distress and tort of outrage claims discussed earlier with regard to the other Plaintiffs should be applied to Reid and Hyde-Lucas as we are reviewing the trial court's grant of summary judgment and CR 12(b)(6) motions on those issues.

[6]Plaintiffs assert, generally, that their right of privacy under the federal constitution has been violated as well. Aside from relying on cases interpreting the federal constitutional right of privacy, Plaintiffs provide little or no argument regarding the federal right. Regardless, when violations of both the federal and Washington constitutions are alleged, this court examines the state constitutional claim first. *State v. Young*, 123 Wn.2d 173, 178, 867 P.2d 593 (1994) (citing *City of Seattle v. Mesiani*, 110 Wn.2d 454, 456, 755 P.2d 775 (1988)).

of action, nor have they established why a constitutional cause of action is more appropriate than the common law cause of action which already exists. Because we hold Plaintiffs are entitled to maintain an action for invasion of privacy under the common law, we decline to reach this issue in this case.

## CONCLUSION

We hold the Plaintiffs in these cases may maintain a civil action for invasion of privacy under the common law. We also hold the trial court did not err in dismissing or granting summary judgment on Plaintiffs' claims for negligent infliction of emotional distress and tort of outrage. We reserve the question of whether a plaintiff may maintain a civil cause of action for violation of our state constitution for another day.

DURHAM, C.J., and DOLLIVER, SMITH, GUY, MADSEN, ALEXANDER, TALMADGE, and SANDERS, JJ., concur.

Reconsideration denied November 16, 1998.