[No. 26792-6-II. Division Two. April 5, 2002.]

GREGORY A. COMAROTO, *Appellant*, v. PIERCE COUNTY MEDICAL
EXAMINER'S OFFICE, *Respondent*.

70

*Gregory A. Comaroto*, pro se.

*Gerald A. Horne, Prosecuting Attorney*, and *Douglas W. Vanscoy, Deputy*, for respondent.

HUNT, C.J. — Gregory Comaroto, convicted of child molestation, appeals the denial of his request for disclosure of his victim's suicide note under the public records portion of the public disclosure act (Act), chapter 42.17 RCW. Agreeing with the trial court that this note is exempt from disclosure under the Act, we affirm.

## FACTS

Comaroto was convicted of committing a lewd or lascivious act on a child, M.L., his wife's niece. M.L. later committed suicide, leaving a handwritten, two-page suicide note for her family. The suicide note was initially included in the Sheriff's Department's Incident Report on M.L.'s death. The Sheriff's Department provided the note to the medical examiner, who returned the original to M.L.'s family and kept a copy.

Comaroto's attorney requested that Pierce County Medical Examiner Dr. John D. Howard disclose "copies of the diary entries and/or suicide note left by [M.L.]." Clerk's Papers (CP) at 13. Dr. Howard responded:

> In connection with this postmortem, my office received from law enforcement two sheets of original writings which were in fact considered in reaching the official classification of the manner of death. The originals were returned to the family, and my office retains copies. . . . Whether the Sheriff's Office keeps copies of such evidence, and whether it would produce such copies at your request if it did, are not matters within my province.
>
> Writings of a suspected suicide are physical evidence considered by the medical examiner in reaching the conclusions required by law. . . .
>
> [T]he subject writings are not available for public inspection and copying . . . and your request is respectfully denied.

CP at 15.

Comaroto sued the Pierce County Medical Examiner's Office, seeking disclosure of the suicide note under the Act, RCW 42.17.340(1). The Medical Examiner opposed the motion, arguing that its copies of M.L.'s suicide note are exempt from disclosure by operation of RCW 68.50.105, which exempts autopsy and post mortem reports and records, subject to limited exceptions.

At Comaroto's request, the trial court reviewed the note in camera under RCW 42.17.340(3) and ruled that it was exempt from disclosure under RCW 68.50.105. The court denied Comaroto's motion for disclosure, sealed the copies of the note,[1] and dismissed the action with prejudice. Comaroto appeals.

## ANALYSIS

### I. PUBLIC DISCLOSURE ACT, CHAPTER 42.17 RCW

■ The Legislature designed the public disclosure act, RCW 42.17.250-.348, to provide public access to public records. RCW 42.17.010; RCW 42.17.260. The Act's purpose is to preserve " 'the most central tenets of representative government, namely, the sovereignty of the people and the accountability to the people of public officials and institutions.' " *O'Connor v. Dep't of Soc. & Health Servs.*, 143 Wn.2d 895, 905, 25 P.3d 426 (2001) (quoting *Progressive Animal Welfare Soc'y v. Univ. of Wash.*, 125 Wn.2d 243, 251, 884 P.2d 592 (1994)). But as our Supreme Court has noted,

> The basic purpose and policy of RCW 42.17 is to allow public scrutiny of government, rather than to promote scrutiny of particular individuals who are unrelated to any governmental operation.

*In re Rosier*, 105 Wn.2d 606, 611, 717 P.2d 1353 (1986).

---

[1] Comaroto did not designate the sealed suicide note as part of the record on appeal.

## A. Standard of Review

██ The Act provides that " '[j]udicial review of all agency actions taken or challenged under RCW 42.17.250 through 42.17.320 shall be de novo.' " *O'Connor*, 143 Wn.2d at 904 (quoting *Progressive Animal Welfare Soc'y*, 125 Wn.2d at 252). " '[T]he appellate court stands in the same position as the trial court where the record consists only of affidavits, memoranda of law, and other documentary evidence' " *O'Connor*, 143 Wn.2d at 904 (quoting *Progressive Animal Welfare Soc'y*, 125 Wn.2d at 252).

The issues here are: (1) whether the suicide note is a public record under the Act; and (2) if so, whether it is exempt from disclosure. We answer yes to both questions.

## B. Disclosure

The following "public records" are subject to disclosure under the Act:

> any writing containing information relating to . . . the performance of any governmental or proprietary function . . . used, or retained by any state or local agency regardless of physical form or characteristics.

RCW 42.17.020(36).[2] RCW 42.17.020(42) further defines "writing" as

> photostating, photographing, and every other means of recording any form of communication or representation . . . and all papers, . . . and other documents including existing data compilations from which information may be obtained or translated.

 If a statute is plain and unambiguous, we derive its meaning from the wording of the statute itself. *Berger v. Sonneland*, 144 Wn.2d 91, 105, 26 P.3d 257 (2001). Under the plain language of RCW 42.17.020(42), M.L.'s handwritten suicide note is a "writing" because it comprises papers

---

[2] *See also Smith v. Okanogan County*, 100 Wn App. 7, 12, 994 P.2d 857 (2000); *Confederated Tribes v. Johnson*, 135 Wn.2d 734, 746, 958 P.2d 260 (1998).

and other documents, from which information may be obtained. The sheriff gathered and temporarily retained the note before delivering it to the medical examiner's office (a governmental agency) to investigate and to determine the cause of M.L.'s death (a government function). RCW 42.17.020(36).

The suicide note, therefore, meets the statutory definition of a public record, which must be disclosed upon request, "unless the record falls within the specific exemptions of subsection (36) of this section, RCW 42.17.310, 42.17.315, or other statute which exempts or prohibits disclosure of specific information or records." RCW 42.17.260(1).

## C. EXEMPTIONS

Here, we analyze two exemptions: (1) a medical examiner's records, exempt under RCW 68.50.105; and (2) investigative records, the nondisclosure of which is necessary to protect "any person's right of privacy," exempt under RCW 42.17.310(1)(d).

### 1. Medical Examiner's Records

■■ The trial court ruled that M.L.'s suicide note was exempt from disclosure under RCW 68.50.105. We agree. RCW 68.50.105 provides that autopsy and post mortem reports and records are confidential and exempt from examination by the public.[3] The suicide note was part of the

---

[3] RCW 68.50.105 provides in pertinent part:

*Reports and records of autopsies or post mortems shall be confidential, except that the following persons may examine and obtain copies* of any such report or record: The personal representative of the decedent as defined in RCW 11.02.005, any family member, the attending physician, the prosecuting attorney or law enforcement agencies having jurisdiction, public health officials, or to the department of labor and industries in cases in which it has an interest under RCW 68.50.103.

. . . For the purposes of this section, the term "family" means the surviving spouse, or any child, parent, grandparent, grandchild, brother, or sister of the decedent, or any person who was guardian of the decedent at the time of death.

(Emphasis added.)

medical examiner's post mortem report about the circumstances of M.L.'s death.

Comaroto argues that because a suicide note is necessarily written before, rather than after ("post") death and creation of medical examiner's records, the note cannot be part of a post mortem record. The timing of the suicide note's creation, however, is not dispositive. "Post mortem" means "pertaining to or occurring during the period after death." STEDMAN'S MEDICAL DICTIONARY 1413 (26th ed. 1995). Although obviously written before death, the suicide note was collected and included in medical examiner Dr. Howard's post mortem report and record of his investigation of the circumstances of M.L.'s death.

As our Supreme Court has clearly held with respect to autopsy photographs,

> RCW 68.50.105 . . . reflects a public policy identified by the Legislature that records made during an autopsy remain confidential and should be released only to those persons which have a genuine interest in the reports. The County's assertion that Plaintiffs[4] have no privacy interest in the autopsy records is refuted by RCW 68.50.105, which requires confidentiality . . . .

*Reid v. Pierce County*, 136 Wn.2d 195, 211-12, 961 P.2d 333 (1998).[5]

If autopsy photographs are protected from public disclosure under the medical examiner's records exemption, then so are suicide notes for the same reasons; they, too, are part of the medical examiner's post mortem report on the cause of death. Consequently, analogizing to *Reid*, we hold that

---

[4] Although *Reid* and its related consolidated cases include some decedents' estates as plaintiffs, the Supreme Court does not address whether the decedent's estate, as differentiated from the decedents' surviving family members, would have a similar right of privacy for the decedent that continues on after death.

[5] *See State v. Petersen*, 47 Wn.2d 836, 838, 289 P.2d 1013 (1955) (Autopsy reports remain confidential even after shared with parties outlined in statute. "If this was not so, then a prosecutor, after obtaining an autopsy report, could pass it on to others, and the legislative pronouncement that such reports are confidential would be violated.") (cited in *Reid*, 136 Wn.2d at 211).

the suicide note is exempt from disclosure under RCW 68.50.105.

## 2. Personal Privacy

██ ██ Washington's Act also protects individual privacy with exemption from public disclosure:

> (1) The following are exempt from public inspection and copying:
>
> . . . .
>
> (d) . . . specific investigative records compiled by investigative, law enforcement, and penology agencies, . . . the nondisclosure of which is essential . . . *for the protection of any person's right to privacy.*

RCW 42.17.310(1)(d) (emphasis added).

> A person's "right to privacy," "right of privacy," "privacy," or "personal privacy," as these terms are used in this chapter, is invaded or violated only if disclosure or information about the person: (1) Would be *highly offensive to a reasonable person,* and (2) is *not of legitimate concern to the public.*

RCW 42.17.255 (emphasis added).

The Act protects *"any* person's privacy," including the deceased's loved ones and their memory of her. As the Supreme Court concluded in *Reid, albeit* under the medical examiner exemption,

> [T]he relatives of the deceased have a protectable privacy interest.
>
> . . . .
>
> We hold the immediate relatives of a decedent have a protectable privacy interest in the autopsy records of the decedent. That protectable privacy interest is grounded in maintaining the dignity of the deceased.

*Reid,* 136 Wn.2d at 212.[6]

---

[6] See also *Favish v. Office of Indep. Counsel,* 217 F.3d 1168, 1173 (9th Cir. 2000), analyzing the similar federal Freedom of Information Act, 5 U.S.C. § 552 (1970 and Supp. V 1975), which similarly exempts from public disclosure records, which

Our Supreme Court has also examined and identified the nature of facts protected by the right of privacy as follows:

"Every individual has some phases of his life and his activities and some facts about himself that he does not expose to the public eye, but keeps entirely to himself or at most reveals only to his family or to close personal friends. Sexual relations, for example, are normally entirely private matters, as are family quarrels, many unpleasant or disgraceful or humiliating illnesses, most intimate personal letters, most details of a man's life in his home, and some of his past history that he would rather forget. When these intimate details of his life are spread before the public gaze in a manner highly offensive to the ordinary reasonable man, there is an actionable invasion of his privacy, unless the matter is one of legitimate public interest."

*Cowles Publ'g Co. v. State Patrol*, 109 Wn.2d 712, 721, 748 P.2d 597 (1988) (quoting RESTATEMENT (SECOND) OF TORTS § 652D, at 386 (1977)) (quoted in *Reid*, 136 Wn.2d at 210).

We fail to see how autopsy photographs of the Plaintiffs' deceased relatives do not constitute intimate details of the Plaintiffs' lives or are not facts Plaintiffs do not wish exposed "before the public gaze."

---

if produced. could reasonably constitute an unwarranted invasion of personal privacy. 5 U.S.C. § 552(b)(7)(C). The Ninth Circuit held that (1) personal privacy extends to the memory of the deceased held by those closely tied to the deceased by blood or love; (2) therefore, it is appropriate to balance invasion of their privacy caused by the release of law enforcement records against the public purpose to be served by disclosure; and (3) applying this balancing test, unpublished autopsy photographs of family member Vince Foster fall within this personal privacy exemption and are not subject to public disclosure under the federal act.

The Court underscored "a zone of privacy in which a spouse, a parent, a child, a brother or a sister preserves the memory of the deceased loved one. To violate that memory is to invade the personality of the survivor." *Favish*, 217 F.3d at 1173. In reaching this conclusion, the court noted other unsuccessful attempts for public disclosure of photos which, if they had not been exempted, would similarly have invaded the families' very personal privacy:

As it happens, the question is not one of first impression in the courts. Release of the photos of the body of the assassinated president has been held to invade the privacy of members of the Kennedy family. Release of a tape of the last conversation of the astronauts on the Challenger has been blocked because it would invade the privacy of their families.

*Favish*, 217 F.3d at 1173 (citations omitted).

Furthermore, our holding is supported by RCW 68.50.105, which declares a public policy that autopsy records regarding deceased persons remain confidential and distributed only to a select few. That statute states:

Autopsies, post mortems—Reports and records confidential—Exceptions. Reports and records of autopsies or post mortems *shall be confidential* . . . .

*Reid*, 136 Wn.2d at 210.

Consistent with this holding, Dr. Howard aptly notes here:

In my opinion, the privacy interests of the deceased in connection with his or her final writings are at least as high, if not higher, tha[n] privacy interests involving photographs of the body at the death scene and during autopsy. The latter involves only the physical body, while the former involves the most personal thoughts of the deceased at perhaps the most intensely private moment of his or her life. In my opinion, it would make no sense to protect death scene and autopsy photos from public dissemination but to publish a deceased's final writings to the world.

CP at 19-20. Agreeing, we hold that to disclose M.L.'s suicide note would be highly offensive to her loved ones. They should not suffer public exposure of her most personal thoughts, issued at the end of her young life. Moreover, the suicide note was not of legitimate concern to the public. RCW 42.17.310(2). Thus, the note was exempt from public disclosure under RCW 42.17.310(1)(d), in addition to the medical examiner's exemption, RCW 68.50.105.

### D. In Camera Review

▮ Comaroto argues that the trial court erred in examining the suicide note in camera and concluding that its contents were irrelevant to any pending litigation in which he had an interest. We disagree. RCW 42.17.340(3) authorizes in camera judicial review of any record sought to be disclosed under this section. Here, the trial court properly reviewed the suicide note in camera, conducted a balancing

test between the competing interests, and concluded that the note was not "a public record that should be disclosed." Report of Proceedings at 19.

Relevancy of the note's contents has no bearing on the other issues Comaroto raises here. Moreover, we are unable to review the trial court's decision because Comaroto has not included the sealed suicide note as part of the record on appeal.

## II. Costs on Appeal

Because we affirm the trial court's ruling that Comaroto is not entitled to disclosure of the suicide note under the Act, he is not entitled to costs and attorney fees. *See* RCW 42.17.340(4); *O'Connor*, 143 Wn.2d at 911.

Affirmed.

Morgan and Armstrong, JJ., concur.