**Susan and Jerry BLACKWELL,
Plaintiffs,**

v.

**HARRIS CHEMICAL NORTH AMERICA, INC., and Harris Chemical
Group, Inc., Defendants.**

**No. Civ.A. 98–2003–KHV.**

United States District Court,
D. Kansas.

June 18, 1998.

---

R. Douglas Gentile, Douthit, Frets, Rouse & Gentile, Kansas City, MO, Colleen L. Kallas, Kansas City, MO, for Plaintiffs.

Henry R. Cox, The Campbell Law Firm, Kansas City, MO, Thomas S. Giotto, Jill M. Lashay, Klett, Lieber, Rooney & Schorling, Pittsburgh, PA, for Defendant.

## MEMORANDUM AND ORDER

VRATIL, District Judge.

Plaintiffs Susan and Jerry Blackwell claim that Harris Chemical North America, Inc. and Harris Chemical Group, Inc. intentionally or negligently inflicted emotional distress on Susan Blackwell and caused loss of consortium for her husband Jerry Blackwell. Plaintiffs also claim that defendants invaded Susan Blackwell's right of privacy and violated her rights under the Family and Medical Leave Act of 1993 [FMLA], 29 U.S.C. § 2601, et seq. The matter comes before the Court on *Defendants Harris Chemical North America, Inc. and Harris Chemical Group, Inc.'s Motion To Dismiss* Doc. # 5) filed March 18, 1998, and *Plaintiffs Susan and Jerry Blackwell's Motion For Leave To File A First Amended Complaint* (Doc. # 22) filed May 4, 1998. For the following reasons, the Court finds that defendants' motion should be sustained in part and overruled in part, and that plaintiffs' motion should be sustained.

### Motion to Dismiss Standards

Defendants ask the Court to dismiss plaintiffs' complaint for failure to state a claim under Fed.R.Civ.P. 12(b)(6). In ruling on a motion to dismiss, the Court must assume as true all well pleaded facts in plaintiffs' complaint and view them in a light most favorable to plaintiffs. *Zinermon v. Burch,* 494 U.S. 113, 118, 110 S.Ct. 975, 979, 108 L.Ed.2d 100 (1990); *see also Swanson v. Bixler,* 750 F.2d 810, 813 (10th Cir.1984). The Court must make all reasonable inferences in favor of plaintiffs, and the pleadings must be construed liberally. *Id.; see also* Fed.R.Civ.P. 8(a); *Lafoy v. HMO Colorado,* 988 F.2d 97, 98 (10th Cir.1993). The issue in reviewing the sufficiency of plaintiffs' complaint is not whether they will prevail, but whether they are entitled to offer evidence to support their claims. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). The Court may not dismiss a cause

of action for failure to state a claim unless it appears beyond a doubt that plaintiffs can prove no set of facts in support of their theory of recovery that would entitle them to relief *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–03, 2 L.Ed.2d 80 (1957); *see also Jacobs, Visconsi & Jacobs, Co. v. City of Lawrence,* 927 F.2d 1111, 1115 (10th Cir. 1991). Although plaintiffs need not precisely state each element of their claims, they must plead minimal factual allegations on those material elements that must be proved. *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir.1991).

### *Factual Background*

. Plaintiffs allege the following facts, which we deem to be true for the purposes of the pending motion to dismiss:

Susan Blackwell worked for defendants from November 1992 through January 1996. Compl. ¶¶ 11, 13(y). Jerry Blackwell is her husband. *Id.* at ¶ 3. Between November 1992 and March 1995, Susan moved from a temporary to a permanent position and achieved promotion to a management position, with eligibility for bonuses. *Id.* at ¶ 11–12. During 1994, Susan also received "very good" and "good" performance reviews. *Id.* at ¶ 12. Nevertheless, while on vacation in March 1995, Susan was demoted. *Id.* at ¶ 13(a) and (b).

After Susan's demotion, defendants subjected Susan to demeaning and humiliating conduct. *Id.* at ¶ 13. Although she had a primarily managerial position, they forced her to perform clerical tasks, data entry, "busy work," and additional tasks unrelated to existing duties, and prevented her from completing other job duties. *Id.* at ¶ 13(b). They constantly harassed her for not completing managerial tasks. *Id.* They also assigned her a personal computer that did not work, while her previous working computer sat on the floor in a supervisor's office. *Id.* at ¶ 13(d). During her appraisal in May of 1995, Susan endured yelling, name calling, and indefensible accusations. Contrary to company procedure, defendants refused to provide copies of the appraisal and made dramatic changes from the original version to the version from which they eventually allowed plaintiff to make notes. *Id.* at ¶ 13(e)–(f).

In August 1995, defendants assigned Susan to work under supervisor Bruce Nied, even though they knew that she had previously complained to upper management about his performance. *Id.* at ¶ 13(g). The assignment to Nied produced most of the degrading conduct, including requirements that Susan keep a written log of daily activities, formally ask permission to leave her office, and perform an unreasonable work load. *Id.* at ¶ 13(h). Nied falsely accused Susan of incompetence and violations of company policy, but refused her requests for documentation· of the shortcomings in her performance. *Id.* at ¶ 13(h), (m), and (k). Defendants knew some of the alleged conduct, but failed to do anything. *Id.* at ¶ 13(i).

From September to October 1995, Susan suffered a serious medical condition which rendered her unable to complete job duties. *Id.* at ¶ 13(p). She requested and received leave under the FMLA, 29 U.S.C. § 2612. *Id.* During her leave, defendants badgered and harassed a nurse at the office of plaintiff's physician, in an attempt to get confidential information regarding plaintiff's illness and treatment. *Id.* Defendants also released detailed information of plaintiff's illness to fellow employees. *Id.* at ¶ 13(q). On return from leave, Susan was placed on probation for "productivity issues" under allegations which defendants knew to be false. *Id.* at ¶ 13(r).

On Thanksgiving Day, 1995, knowing that Susan's father was terminally ill and near death in the hospital, Nied required Susan to work a full day. *Id.* at ¶ 13(s). Susan's father died the following day. *Id.* Upper management met with Susan concerning some of Nied's conduct and assured her that the meetings were confidential. *Id.* at ¶ 13(t). Nied later confronted plaintiff, however, regarding the details of the meetings. *Id.*

Susan's working conditions continued to decline after she put defendants on notice regarding discrimination issues. *Id.* at ¶ 13(v). Defendants forced Susan to move into a cubicle and allowed a lower level warehouse clerk to move into her former office. *Id.* at ¶ 13(w). In January 1996, Human Resources told plaintiff that she had ten days

to complete certain reports or be terminated. *Id.* at ¶ 13(x). Human Resources intentionally made this demand in order to terminate Susan. *Id.* Upon learning that Susan had been taking meeting notes on the advice of legal counsel, defendants terminated her employment on the basis of false accusations. *Id.* at ¶ 13(y).

As a result of defendants' conduct, Susan suffered severe mental and emotional distress with accompanying physical injury and ailments. *Id.* at ¶ 15. Jerry sustained the loss and impairment of his wife's services and domestic duties, as well as her companionship. *Id.* at ¶ 16. Following her termination, Susan became a disabled person within the meaning of K.S.A. § 60–515 and was disabled for a period of time following January 12, 1996. *Id.* at ¶ 18. Plaintiffs claim that defendants intentionally or negligently inflicted emotional distress on Susan, resulting in damages to Susan and the loss of Susan's services and companionship for her husband. Plaintiffs also claim that defendants invaded Susan's right of privacy and violated her rights under the FMLA.

### Analysis

#### A. Action Against Wrong Defendants

Defendants assert several defenses, beginning with the argument that plaintiffs have sued the wrong defendants. Defendants assert that neither defendant employed Susan at any time, and submit the affidavit of Keith Clark, General Manager for North American Salt Company ("NASC") in support of this assertion. Defendants also seek to convert their motion to dismiss into a motion for summary judgment. Plaintiffs have sufficiently alleged that defendants were Susan's employers, however, and the Court therefore overrules defendants' motion to dismiss.[1]

#### B. Statute of Limitations

■ Defendants assert that plaintiffs' state law claims are time barred by the two-year statute of limitations under K.S.A. § 60–513(a)(4). Except for one incident on January 5, 1996 and Susan's termination on January 12, 1996, all of the challenged conduct occurred in 1995. Plaintiffs filed suit on January 6, 1998, pleading the tolling provision of K.S.A. § 60–515(a), which provides in part as follows:

Except as provided in K.S.A. § 60–523, if any person entitled to bring an action, other than for the recovery of real property or a penalty or a forfeiture, at the time the cause of action accrued or at any time during the period of the statute of limitations is running, is less than 18 years of age, an incapacitated person or imprisoned for a term less than such person's natural life, such person shall be entitled to bring such an action within one year after the person's disability is removed....

Plaintiffs allege that Susan was legally incapacitated within the meaning of K.S.A. § 60–515, for a period following her termination. Defendants contend that to invoke the tolling provision of § 60–515, plaintiff must plead facts to support her allegation of legal incapacity. Defendants cite *Gardner v. Toyota Motor Sales, U.S.A., Inc.*, 793 F.Supp. 287, 289–90 (1992), which states that to raise the tolling provisions of § 60–515, plaintiff must assert facts which justify a finding of legal incapacity. *Gardner* relies on *Seymour v. Lofgreen*, 209 Kan. 72, 77, 495 P.2d 969, 974 (1972), which holds that where a party does not assert legal incapacity, the party will be presumed to have legal capacity.

This case is distinguishable, however, from *Gardner*. Plaintiffs in *Gardner* did not expressly plead the tolling provisions of § 60–515; they merely asserted that the plaintiff received "serious and permanent brain damage" and that her complaint was brought by her guardian. 793 F.Supp. at 290. While

---

1. As noted below, the Court by this order is sustaining plaintiffs' motion for leave to file an amended complaint. That complaint will supercede the complaint which defendants seek to have dismissed. While the Court notes that defendants wish to convert the present motion to dismiss into a motion for summary judgment, a more expedient way to resolve the issue on the merits will be for defendants to file a motion for summary judgment on the allegations of the amended complaint. That motion will of course comply with Rule 56, Fed.R.Civ.P., and D.Kan. Rule 56.1, and to sustain their claim that defendants are proper parties, plaintiffs will be required to demonstrate a genuine issue of material fact on that issue.

not clearly asserting facts to support a claim of legal incapacity, plaintiffs in this case specifically plead the tolling provisions of K.S.A. § 60–515. Plaintiffs have sufficiently pled legal incapacity to assert the tolling provisions of § 60–515. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir.1991) (plaintiff required to plead minimal factual allegations on material elements that must be proved to recover); and *Trevino v. Union Pacific R. Co.*, 916 F.2d 1230, 1234 (7th Cir.1990) (Rule 8(a) relieves plaintiff from pleading technicalities and from alleging detailed facts that establish right to judgment).

### C. Loss of Consortium

■ The complaint includes claims for loss of consortium, brought in Jerry's name. Under Kansas law, an action to recover for loss of consortium must be brought in the name of the injured person for the benefit of that person's spouse. K.S.A. § 23–205; *see also Gardner*, 793 F.Supp. at 291. Thus, as plaintiffs concede, the claims for loss of consortium and damages must be brought by Susan for the benefit of Jerry. Plaintiffs seek to amend their complaint, however, substituting Susan for Jerry as the correct plaintiff in the consortium claim.

■ Rule 15, Fed.R.Civ.P., governs the amendment of pleadings. Rule 15(a) states that "a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Motions to amend are matters of discretion for the trial court, *Woolsey v. Marion Laboratories, Inc.*, 934 F.2d 1452, 1462 (10th Cir. 1991), and a refusal to grant leave to amend should normally be justified by factors such as futility, undue delay, undue prejudice to the non-moving party, or bad faith of the moving party. *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir.1993).

Defendants argue that leave to assert a consortium claim on Jerry's behalf would be futile because of the two-year limitations pe-

riod, K.S.A. § 60–513. Where the spouse filing suit for personal injuries is legally incapacitated, however, the limitations period which governs a related loss of consortium claim is covered under K.S.A. § 60–515. *Gardner*, 793 F.Supp. at 291. Thus if Susan was legally incapacitated—and we must accept the allegation that she was—an amended consortium claim in her name would not be barred by the two-year limitations period and it would not be necessarily futile. The Court therefore grants plaintiffs leave to amend to substitute Susan for Jerry as plaintiff on the consortium claim.

### D. Addition of North American Salt Company as Defendant

■ Plaintiffs seek to add North American Salt Company ("NASC") as a defendant to this action. Since plaintiffs did not file this motion until after the two-year limitations period had expired, their claims against NASC are barred unless they relate back to the date of the original complaint.

Rule 15(c)(3), Fed.R.Civ.P., governs relation back of an amendment. *Watson v. Unipress, Inc.*, 733 F.2d 1386, 1389 (10th Cir. 1984). Under Rule 15(c)(3), an amendment relates back to the date of the original pleading when the amendment changes the party or the naming of the party against whom a claim is asserted if (1) the claim arose out of the conduct, transaction, or occurrence set forth in the original pleadings; (2) the party to be joined received such notice that it will not be prejudiced in maintaining a defense; (3) the party to be joined knew or should have known that but for a mistake of identity the action would have been brought against it; and (4) the second and third requirements must have been fulfilled within the prescribed period for service of process—120 days after the filing of the original complaint under Rule 4(m). *Bloesser v. Office Depot. Inc.*, 158 F.R.D. 168, 170 (D.Kan.1994). All four conditions of Rule 15(c)(3) must be satisfied.[2]

---

**2.** Rule 15(c)(3) provides: "An amendment of a pleading relates back to the date of the original pleading when (1) relation back is permitted by the law that provides the statute of limitations applicable to the action, or (2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set

forth or attempted to be set forth in the original pleading, or (3) the amendment changes the party or the naming of the party against whom a claim is asserted if the forgoing provision (2) is satisfied and, within the period provided by Rule 4(m) for service of the summons and complaint, the party to be brought in by amendment (A) has

The claims against NASC arise from conduct set forth in the original complaint. As of March 18, 1998, NASC had notice of the institution of the action and knew or should have known that the action would have been brought against it but for plaintiffs' mistake concerning the identity of the proper party. Keith Clark, general manager for NASC, submitted an affidavit on March 16, 1998 in support of defendants' assertion that Harris Chemical North America, Inc. and Harris Chemical Group, Inc. never employed Susan Blackwell. That affidavit affirmatively stated that NASC did employ Susan during the complaint period, and that NASC employed the supervisors named in her complaint. Within 120 days of the filing of the complaint, NASC knew that plaintiffs had filed suit against defendants and knew or should have known that the action should have been brought against them as Susan's employer. Plaintiffs' amended complaint therefore relates back to the original complaint.

■ Defendants contend that plaintiffs' amended complaint is nonetheless futile because plaintiffs do not state actionable claims against NASC. Defendants' arguments are better suited to a motion by NASC, however, under Rule 12(b)(6) or Rule 56. Discovery has not commenced, and no prejudice against NASC is alleged or shown. Nor have defendants shown undue delay or bad faith on the part of plaintiffs. The Court therefore grants plaintiffs leave to amend.

### E. Intentional Infliction of Emotional Distress

■ Defendants argue that plaintiff's claim for intentional infliction of emotional distress is not actionable because their conduct, as alleged, was not "outrageous" under Kansas law. Kansas law requires a plaintiff to demonstrate that (1) defendant's conduct was intentional or in reckless disregard or plaintiff; (2) defendant's conduct was extreme and outrageous; (3) a causal connection exists between defendant's conduct and plaintiff's mental distress; and (4) plaintiff's mental distress was extreme and severe. *Roberts v. Saylor,* 230 Kan. 289, 292, 637 P.2d 1175, 1179 (1981). The Kansas Supreme Court has established two threshold requirements which must be satisfied, and which the court must determine. *Id.* First, the court must ascertain whether defendant's conduct may be reasonably regarded as so extreme and outrageous as to permit recovery. *Id.*[3] If so, the court then determines whether the emotional distress suffered by plaintiff is so severe that no reasonable person should be expected to endure it. *Id.* If plaintiff's claim fails either of these threshold requirements, the claim will not survive.

■ To declare that a defendant's conduct maybe regarded as "extreme and outrageous," a court must conclude that the behavior meets the following standard:

> Liability may be found only in those cases where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond the bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society. It was further said that liability may be found to exist generally in a case when the recitation of facts to an average citizen would arouse resentment against the actor, and lead that citizen to spontaneously exclaim, "Outrageous!" It should be understood that liability does not arise from mere insults, indignities, threats, annoyances, petty expression, or other trivialities. Members of the public are necessarily expected and required to be hardened to a certain amount of criticism, rough language and to occasional acts and words that are definitely inconsiderate and unkind. The law should not intervene where someone's feelings merely are hurt... Conduct to be a sufficient basis for an action to recover for emotional distress must be outrageous to the point that it goes beyond the bounds of

received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party."

3. In this case, defendants have maintained only that plaintiffs have failed to allege that their conduct was extreme and outrageous.

decency and is utterly intolerable in a civilized society.

*Roberts,* 230 Kan. at 293, 637 P.2d at 1179.[4]

Plaintiffs argue that defendants' conduct is far removed from the kind of daily business conduct that society must tolerate. However, the conduct alleged by plaintiffs does not rise to the strict standards which Kansas courts have established for the tort of outrage. *See e.g., Bernard v. Doskocil Cos. Inc.,* 861 F.Supp. 1006 (D.Kan.1994) (where assistant foreman and coworkers told racial jokes around African–American plaintiff, used racially derogatory comments, threatened to put rag saturated with lacquer thinner around plaintiff's neck while welding, and placed welding tip on plaintiff's chair, thus puncturing his buttocks, allegations outrageous enough to defeat motion for summary judgment); *Taiwo v. Vu,* 249 Kan. 585, 822 P.2d 1024 (1991) (outrage claim properly submitted to jury when former employer refused to pay plaintiff's full wages, imprisoned plaintiff in building, falsely accused plaintiff of vandalism, then filed false police report charging plaintiff with crime); *Gomez v. Hug,* 7 Kan.App.2d 603, 645 P.2d 916 (1982) (summary judgment appropriately denied when employer spent several days calling Hispanic employee a "fucking spic," then had tirade where employer shook fist in front of plaintiff's eyes and pounded on table threatening, among other things, "don't stand there like a damn fool because that is all you are is a pile of shit"). In this case, defendants' alleged behavior is more akin to that in *Serda v. Mellon Mortgage Co.,* 1997 WL 534458, *4 (D.Kan.), where the employer's conduct was at most characterized as rude, abrasive and unprofessional. In this case, defendants' actions were arguably unprofessional and inconsiderate, and sometimes downright rude, but most of defendants' behavior consisted of daily business decisions which employers routinely make. *See e.g., Ali v. Doublas Cable Communications,* 929 F.Supp. 1362, 1372 (D.Kan.1996). Individually or in the aggregate, plaintiffs' allegations do not rise to the level of extreme and outrageous conduct which is beyond the bounds of decency. Defendants are therefore entitled to dismissal of Count I of the complaint.

**F. Negligent Infliction of Emotional Distress**

Plaintiffs argue that defendants negligently inflicted emotional distress by and through the behavior of their employees. "[I]n order to recover for negligent infliction of emotional distress, plaintiff must allege and prove negligent conduct by defendant." *Garcia–Paz v. Swift Textiles, Inc.,* 873 F.Supp. 547, 563 (D.Kan.1995) (citing *Tyrrell v. Boeing Co.,* 1994 WL 114841 (D.Kan.1994). In this case, plaintiffs' allegations relate only to intentional conduct, i.e., harassment, accusations, yelling, disparate treatment, and other intentional actions. *Id.* at ¶ 13. The Court has carefully reviewed the complaint and finds no allegations of negligence. Defendants are therefore entitled to dismissal of Count II of the complaint.[5]

**G. Invasion of Privacy**

Plaintiffs allege that defendants invaded their privacy by unreasonably intruding upon their seclusion and giving unreasonable publicity to their private lives. An invasion of privacy action is mainly concerned with compensation for injured feelings or mental suffering of the injured party. *Munsell v. Ideal Food Stores,* 208 Kan. 909, 924, 494 P.2d 1063 (1972). Generally, invasion of privacy is actionable where plaintiff

---

4. Kansas courts have been extremely reluctant to extend actions for outrage to employment discrimination claims. *See Laughinghouse v. Risser,* 754 F.Supp. 836, 843 (D.Kan.1990); *see also Bolden v. PRC Inc.,* 43 F.3d 545, 554 (10th Cir. 1994) (Kansas courts reluctant to extend outrage cause of action to discrimination and harassment claims); *Schartz v. Unified School District No. 512,* 953 F.Supp. 1208, 1221 (D.Kan.1997) (liability for tort of outrage rarely arises in discrimination and harassment context). Because "extreme and outrageous" conduct is such a high standard, and because of courts' reluctance to

extend outrage actions to employment and discrimination claims, it is difficult to maintain an outrage claim in the employment context under Kansas law.

5. Because the Court finds that plaintiffs do not state a claim for either intentional infliction or negligent infliction of emotional distress, it need not address defendants' additional arguments that both claims are barred by the exclusivity provision of the Kansas Workers' Compensation Act.

**1310**

claims (1) unreasonable intrusion upon the seclusion of another; (2) appropriation of another's name or likeness; (3) unreasonable publicity given to another's private life; or (4) publicity that unreasonably places another in a false light before the public. Restatement (Second) of Torts, § 652A (1976). Plaintiffs sufficiently plead that defendants unreasonably intruded upon plaintiffs' seclusion by harassing and badgering the office of Susan's physician to obtain confidential information, and that defendants unreasonably publicized personal medical information to other employees. Invasion of privacy actions are governed by a two-year statute of limitations under K.S.A. § 60–513 (*Newcomb v. Ingle,* 827 F.2d 675, 678 (10th Cir.1987)), but plaintiffs in this case have pled the tolling provisions of K. S.A. § 60–515. Thus, defendants' motion to dismiss Count III must be overruled.

**H. The Family and Medical Leave Act of 1993**

■ The Family and Medical Leave Act was designed to "balance the demands of the workplace with the needs of families." 29 U.S.C. § 2601(b). Under this Act, employees can take reasonable medical leave without fear of reprisal. The Act entitles eligible employees who work for eligible employers to take up to twelve workweeks of leave during a twelve-month period when medically necessary. 29 U.S.C. § 2612(a). The Act prohibits employers from interfering with or denying the exercise of rights guaranteed by the FMLA and authorizes civil actions by employees. 29 U.S.C. §§ 2615(a) and 2617(a). Such actions are governed by a two-year limitations period, except in actions where the alleged violations are willful, in which case the limitations period is extended to three years. 29 U.S.C. § 2617(c)(2).

Plaintiffs sufficiently plead a violation of the FMLA. Susan alleges that when she returned from leave, she was not reinstated to the same or an equivalent position. *See* 29 U.S.C. § 2614(a)(1). An equivalent position is one with "equivalent employment benefits, pay, and other terms and conditions of employment," 29 U.S.C. § 2614(a)(1)(B), and must include "the same or substantially similar duties and responsibilities, which must entail substantially equivalent skill, effort, re-

sponsibility, and authority." 29 C.F.R. § 825.215. In this case, Susan alleges that upon return from leave she was placed on probation and otherwise discriminated against for exercising her rights under the FMLA. She also alleges that defendants terminated her as a result of the exercise of her FMLA rights. Defendants' motion to dismiss Count IV must be denied.

**IT IS THEREFORE ORDERED** that *Motion to Dismiss of Defendants Harris Chemical North America, Inc. and Harris Chemical Group. Inc.* (Doc. # 5) filed March 18, 1998 be and hereby is sustained as to Counts I and II and overruled as to Counts III and IV.

**IT IS HEREBY FURTHER ORDERED** that *Motion For Leave To File A First Amended Complaint of Plaintiffs Susan and Jerry Blackwell* (Doc. # 22) filed May 4, 1998 be and hereby is sustained to the extent that plaintiffs are granted leave to file an amended complaint which is not inconsistent with this order. Plaintiffs are ordered to file their amended complaint on or before July 7, 1998.

**IT IS HEREBY FURTHER ORDERED** that the stay which the Court entered on April 8, 1998, be and hereby is lifted. On or before June 28, 1998, the parties shall exchange the disclosures required by Rule 26(a), Fed.R.Civ.P.

**IT IS HEREBY FURTHER ORDERED** that *Plaintiffs' Motion to Strike Or, In The Alternative, To Require Defendants To Comply With Rule 56.1 Or, In The Alternative, For Leave To File Affidavit* (Doc. # 20) filed May 1, 1998 be and hereby is overruled as moot.