[No. 23012-1-III.   Division Three.   July 26, 2005.]

STEVEN D. WHITE, JR., *Appellant*, v. THE TOWN OF WINTHROP ET AL., *Respondents*.

*Sidney J. Strong* (of *Law Offices of Sidney J. Strong*), for appellant.

*Patricia K. Buchanan* and *Aaron P. Gilligan* (of *Lee Smart Cook Martin & Patterson, P.S., Inc.*), for respondents.

¶1 SCHULTHEIS, J. — Steven D. White Jr. filed suit against his employer for disability discrimination and invasion of privacy based on his employer's unauthorized disclosure of his medical information to a local newspaper that published it. The trial court granted the employer's summary judgment motion. Because Mr. White has asserted no colorable action under the disability discrimination law, we affirm dismissal of that cause. However, since he has presented issues of fact to sustain a common law action for the violation of his privacy, we reverse summary dismissal of that claim.

## FACTS

¶2 Mr. White was diagnosed with epilepsy in elementary school. He reports a reluctance to discuss his condition with others and believes that people generally regard epilepsy as "an unspeakable disease that requires them to avoid, if not shun and penalize those who are believed to have it." Clerk's Papers (CP) at 143.

¶3 Mr. White began working for the town of Winthrop in November 2000, as a reserve deputy marshal. In January 2001, Mr. White received a full-time appointment as a deputy marshal for Winthrop. He became the interim town marshal in April 2001 and he received the permanent appointment June 2001.

¶4 Around midnight on July 21, 2001, Mr. White had a seizure when he and another officer went to a local establishment in Winthrop to conduct a bar check. He was taken to the hospital by ambulance, where he was treated and released. On July 24, Mr. White followed up with his physician. Because of his seizure, his doctor was required to restrict him from driving and carrying a weapon for six months. He was told he could be placed on light duty and then he could be released for full duty after six months from the date of the seizure if his medication remained at a therapeutic level.

¶5 The next day, Mr. White asked to meet privately with Don Johnson, the mayor of Winthrop, to discuss how his restrictions would affect his employment. Mr. White made it clear their conversation was private and that the details of his medical condition were not to be shared with anyone. Mayor Johnson told Mr. White that he should resign. Mr. White agreed to resign. He submitted a brief letter of resignation in which he stated he was resigning for health reasons.

¶6 On August 1, the *Methow Valley News* published an article on its front page, which was headlined, "Winthrop marshal resigns after seizure." CP at 152. The article read in relevant part:

> The Town of Winthrop has found itself once again without a police chief after Winthrop Marshal Steve White resigned for health reasons.
>
> Winthrop Mayor Don Johnson said White, who has been taking medications regularly to control seizures, suffered a seizure July 21 after a bout with food poisoning made it difficult for him to keep his medications down.

CP at 152.

¶7 Mr. White filed suit against Mayor Johnson and the town of Winthrop (referred to here collectively as the employer). The employer successfully moved for summary judgment. Mr. White appeals.

## ANALYSIS

¶8 When reviewing an order of summary judgment, we engage in the same inquiry as the trial court. *Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982). Summary judgment is appropriate only if the pleadings, affidavits, depositions, and admissions on file demonstrate the absence of any genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. CR 56(c). Like the trial court, we must consider all facts submitted and all reasonable inferences from them in the light most favorable to the nonmoving party and we will uphold the grant of a motion only if, from all the evidence, reasonable persons could reach but one conclusion. *Wilson*, 98 Wn.2d at 437.

DISCRIMINATION CLAIM

■ ¶9 Mr. White alleges a cause of action for a violation under RCW 49.60.180(4). That statute provides:

It is an unfair practice for any employer:

. . . .

(4) To print, or circulate, or cause to be printed or circulated any statement, advertisement, or publication, or to use any form of application for employment, or to make any inquiry in connection with prospective employment, which expresses any limitation, specification, or discrimination as to age, sex, marital status, race, creed, color, national origin, or the presence of any sensory, mental, or physical disability or the use of a trained dog guide or service animal by a disabled person, or any intent to make any such limitation, specification, or discrimination, unless based upon a bona fide occupational qualification: PROVIDED, Nothing contained herein shall prohibit advertising in a foreign language.

RCW 49.60.180.

¶10 The language of the statute expressly prohibits preemployment inquiries which specifically discriminate against the protected categories set forth in RCW 49-.60.180(4). *Fahn v. Cowlitz County*, 93 Wn.2d 368, 374-75, 610 P.2d 857, 621 P.2d 1293 (1980). It also prohibits discrimination in written job descriptions such as those used to advertise a position.

¶11 Mr. White asserts that RCW 49.60.180(4) proscribes as an unfair practice the dissemination of his medical information. Chapter 49.60 RCW "shall be construed liberally for the accomplishment of the purposes thereof." RCW 49.60.020. The most liberal construction will not sustain Mr. White's position.

¶12 Mr. White also relies on a portion of WAC 162-22-090. He notes that the regulation requires that health care information be kept confidential and separate from personnel files and that the information be disclosed only "on a need to know basis." WAC 162-22-090(4). In context, however, the regulation deals with the employment of disabled persons. It regulates how an employer may seek the opinion of a health care professional to determine whether a disability affects job performance and to obtain suggestions concerning accommodations. WAC 162-22-090(1)-(3). The regulation applies to RCW 49.60.180. WAC 162-22-010. It is, however, inapposite since Mr. White does not raise a colorable claim under the statute.

¶13 The court did not err by dismissing Mr. White's discrimination claim under RCW 49.60.180(4) for the unauthorized publication of health care information.

VIOLATION OF PRIVACY

¶14 Washington recognizes a common law right to privacy. *Reid v. Pierce County*, 136 Wn.2d 195, 207, 961 P.2d 333 (1998). We base actions for violation of the right as articulated in *Restatement (Second) of Torts* § 652D (1977):

"One who gives publicity to a matter concerning the private life of another is subject to liability to the other for invasion of his privacy, if the matter publicized is of a kind that

"(a) would be highly offensive to a reasonable person, and

"(b) is not of legitimate concern to the public."

*Reid*, 136 Wn.2d at 205 (quoting RESTATEMENT, *supra*, § 652D).

¶15 As concerns the general nature of matters protected by the right of privacy:

"Every individual has some phases of his life and his activities and some facts about himself that he does not expose to the public eye, but keeps entirely to himself or at most reveals only to his family or to close personal friends. Sexual relations, for example, are normally entirely private matters, as are family quarrels, many unpleasant or disgraceful or humiliating illnesses, most intimate personal letters, most details of a man's life in his home, and some of his past history that he would rather forget. When these intimate details of his life are spread before the public gaze in a manner highly offensive to the ordinary reasonable man, there is an actionable invasion of his privacy, unless the matter is one of legitimate public interest."

*Reid*, 136 Wn.2d at 210 (quoting *Cowles Publ'g Co. v. State Patrol*, 109 Wn.2d 712, 721, 748 P.2d 597 (1988) (quoting RESTATEMENT, *supra*, § 652D cmt. b, at 386)). Mr. White has presented an issue of fact as to whether his seizure disorder constituted one of the " 'many unpleasant or disgraceful or humiliating illnesses' " one would not wish announced in the newspaper. *Cowles Publ'g Co.*, 109 Wn.2d at 721 (quoting RESTATEMENT, *supra*, § 652D).

¶16 The employer argues that Mr. White's seizure condition was not a private matter if one considers the size of the community, that Mr. White's seizure occurred in public, and that Mr. White had a history of seizures. The employer implies that the public would be just as likely to hear about the seizure—or any prior seizure—in the town coffee shop or grocery store as they would have been informed from the newspaper article. This argument involves two aspects; neither favors the employer. First, the

argument is significant to proximate cause. Proximate cause is generally a question of fact. *Hertog v. City of Seattle*, 138 Wn.2d 265, 275, 979 P.2d 400 (1999). Second, the employer's contention that the matters were already in the public domain when Mayor Johnson provided the details to the newspaper essentially asks the court to consider all of the circumstances under which the disclosure occurred. These are matters for a jury to decide. *Wilson*, 98 Wn.2d at 437. *See Klinke v. Famous Recipe Fried Chicken, Inc.*, 94 Wn.2d 255, 256-57, 616 P.2d 644 (1980) (summary judgment is not appropriate when reasonable minds might reach different conclusions). Thus, the employer's argument only improves on the questions of fact.

¶17 The employer also argues that neither Mayor Johnson nor the article revealed that Mr. White had epilepsy; only that he had seizures for which he had regularly been taking medicine to control. This could be a distinction without a difference, or at least it presents a genuine issue of material fact. In other words, a jury could find that the mayor's statement and the article that reported it undoubtedly referred to epilepsy.

¶18 The employer argues that the information disclosed was not highly offensive. Cases from other jurisdictions involving publication of the intimate details of an employee's medical health have met the "highly offensive" requirement. *See Blackwell v. Harris Chem. N. Am., Inc.*, 11 F. Supp. 2d 1302, 1310 (D. Kan. 1998) (holding alleged disclosure of personal medical information to other employees sufficiently met elements of private facts tort); *Wagner v. City of Holyoke*, 241 F. Supp. 2d 78, 100 (D. Mass. 2003) (denying summary dismissal of police officer's claim for disclosure of private facts where employer allegedly distributed a note from his doctor regarding hypertension and the contents of a psychiatric evaluation), *aff'd*, 404 F.3d 504 (1st Cir. 2005). *But see Seattle Fire Fighters Union, Local No. 27 v. Hollister*, 48 Wn. App. 129, 737 P.2d 1302 (1987). Notably, Washington courts have acknowledged that people make prejudgments about persons with epilepsy. *Barnes v.*

*Wash. Natural Gas Co.*, 22 Wn. App. 576, 582, 591 P.2d 461 (1979).

■ ¶19 Moreover, contrary to the employer's argument, the sympathetic manner in which Mr. White was portrayed in the public announcement of his illness does not weaken his case. Quite the opposite is true. The right to privacy acknowledges that the reason a person wishes to keep his or her illness confidential is to avoid the pity that knowledge of such a disease would engender in others. *See Cowles Publ'g Co.*, 109 Wn.2d at 721 (quoting RESTATEMENT, *supra*, § 652D cmt. b, at 386), *quoted in Reid*, 136 Wn.2d at 210.

■ ¶20 Mr. White agrees that there was a legitimate public interest in the announcement that his resignation was for health reasons but disagrees there was a legitimate public interest in the specific nature of his health issues. To be "legitimate," the public interest must be "reasonable." *Dawson v. Daly*, 120 Wn.2d 782, 798, 845 P.2d 995 (1993) (interpreting public disclosure act, RCW 42.17.260(1), which requires all state and local agencies to disclose any public record upon request unless the record falls within certain specific exemptions).

¶21 In *Landrum v. Board of Commissioners of Orleans Levee District*, 95-1591 (La. App. 4 Cir. 11/27/96), 685 So. 2d 382 , the plaintiff was a levee board police officer who was suspended after a positive drug test. Mr. Landrum alleged that the levee board disclosed the results of the drug test, which was purportedly inaccurate, to the media. The court found that Mr. Landrum had stated a claim for invasion of privacy because the levee board allegedly allowed "highly personal and embarrassing information to go beyond those with a legitimate need to know and into the public domain." *Id.* at 392. The court in *Landrum* also held that "the reasonableness of the public disclosure of the results of the drug testing is a factual question that should not be decided on summary judgment." *Id.* Similarly, in Washington, when reasonableness is a material issue in litigation, whether a party acts reasonably is generally a question of fact, and summary judgment is inappropriate. *See O'Donnell v.*

*Zupan Enters., Inc.,* 107 Wn. App. 854, 860, 28 P.3d 799 (2001); *Estate of Lee v. City of Spokane,* 101 Wn. App. 158, 168, 2 P.3d 979 (2000) (citing *Staats v. Brown,* 139 Wn.2d 757, 775, 991 P.2d 615 (2000)); *Morris v. McNicol,* 83 Wn.2d 491, 495, 519 P.2d 7 (1974).

¶22 The employer relies on *Cowles,* 109 Wn.2d 712 and *Hollister,* 48 Wn. App. 129. As is the case with the majority of the authority regarding privacy issues in Washington, both cases interpret the release of records under the public disclosure act. Here, the employer was not responding under the compulsion of the act. The jury should have an opportunity to decide whether the public had a legitimate concern in the exact nature of Mr. White's condition. *See Klinke,* 94 Wn.2d at 256-57.

¶23 Finally, the employer argues that Mr. White cannot prove damages. Mr. White alleged he could not find comparable work and he lost employment opportunities as a result of the statement in the newspaper. The employer provided evidence to the contrary. Regardless, Mr. White's damages are not so limited. If he prevails in his privacy action, he is entitled to damages for:

" '(a) the harm to his interest in privacy resulting from the invasion;

" '(b) his mental distress proved to have been suffered if it is of a kind that normally results from such an invasion; and

" '(c) special damage of which the invasion is a legal cause.' "

*Reid,* 136 Wn.2d at 205 n.4 (quoting RESTATEMENT (SECOND) OF TORTS § 652H (1977)). He may also seek to recover for the harm resulting to his reputation from the publicity. RESTATEMENT, *supra,* § 652H cmt. a.

## CONCLUSION

¶24 We affirm the trial court's proper dismissal of Mr. White's discrimination claim under RCW 49.60.180(4) for the unauthorized publication of health care information. However, we reverse the dismissal of the claim for violation

of privacy. Because we affirm the dismissal of the discrimination claim, we deny his request for attorney fees under chapter 49.60 RCW.

KATO, C.J., and KURTZ, J., concur.