IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| TOM AND JUDY CHARTIER, husband and wife and the marital community composed thereof, | No. 85378-3-I |
| Appellants, | DIVISION ONE |
| v. | UNPUBLISHED OPINION |
| KEN AND DARLENE CARLSON, husband and wife and the marital community composed thereof, | |
| Respondents. | |

DÍAZ, J. — The trial court granted summary judgment to Ken and Darlene Carlson, dismissing Tom and Judy Chartier's claims that the Carlsons defamed them, invaded their privacy, intentionally inflicted emotional distress, and negligently inflicted emotional distress. We affirm the trial court.

I.      BACKGROUND

The Chartiers and the Carlsons[1] were members of an antique automobile enthusiasts repair club. The couples had disagreements. At one point, Ken Carlson allegedly threatened to physically harm Tom Chartier. The Chartiers claim

---

[1] Because of the shared last names of the parties, we occasionally refer to them by their first names for clarity.

the Carlsons thereafter made a plethora of misrepresentations about their relationship, as documented in four separate communications among each other or other members of their club.

The Chartiers sued the Carlsons, who later moved for summary judgment. The Chartiers did not file a timely substantive response and, at the hearing on the motion, chose to proceed anyway by heavily relying on discovery responses and declarations which they had filed earlier in the case. The court granted summary judgment to the Carlsons.

The Chartiers appeal.

## II. ANALYSIS

We review summary judgment orders de novo, performing the same inquiry as the trial court. Jones v. Allstate Ins. Co., 146 Wn.2d 291, 300, 45 P.3d 1068 (2002). We consider the facts and the inferences from the facts in a light most favorable to the nonmoving party. Id. The court may grant summary judgment if the pleadings, affidavits, and depositions establish that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Id. at 300-01. Summary judgment is also appropriate if the plaintiff, as the nonmoving party, "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Young v. Key Pharmaceuticals, Inc., 112 Wn.2d 216, 225, 770 P.2d 182 (1989), overruled in part on other grounds by Young v. Key Pharmaceuticals, Inc.,130 Wn.2d 160, 922 P.2d 59 (1996) (plurality opinion) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d

2

265 (1986)). "We may affirm a trial court's decision on a motion for summary judgment on any ground supported by the record." Port of Anacortes v. Frontier Indus., Inc., 9 Wn. App. 2d 885, 892, 447 P.3d 215 (2019).

A.     Defamation

In a defamation case, the plaintiff must establish "falsity, an unprivileged communication, fault, and damages." Mohr v. Grant, 153 Wn.2d 812, 822, 108 P.3d 768 (2005) (plurality opinion). "To survive a defense motion for summary judgment, a defamation plaintiff must allege facts that would raise a genuine issue of fact for the jury *as to each element*." Id. (emphasis added).

Even assuming without deciding they had established the first three elements of a defamation claim, to survive summary judgment, the Chartiers, as the nonmoving party, must meet their "burden of production to create an issue" of material fact as to whether the Carlsons' actions "actually" damaged them. Rice v. Offshore Sys., Inc., 167 Wn. App. 77, 89, 272 P.3d 865 (2012); Reykdal v. Espinoza, 196 Wn.2d 458, 466, 473 P.3d 1221 (2020) ("Generally, a plaintiff must prove and may recover only the 'actual damages' caused by defamation.") (quoting Haueter v. Cowles Publ'g Co., 61 Wn. App. 572, 578, 811 P.2d 231 (1991)).

"Actual damages" are damages "to compensate for a proven injury or loss" or "damages that repay actual losses." Actual Damages, BLACK'S LAW DICTIONARY (12th ed. 2024). In other words, "[i]n a Washington defamation case, the plaintiff can recover compensatory damages, but [not] punitive damages. The goal of compensatory damages is to compensate the plaintiff for harm caused by the defendant's wrongful conduct. In Washington, then, a defamation plaintiff can

recover damages only if he or she proves harm factually caused by the defendant's wrongful conduct." Schmalenberg v. Tacoma News, Inc., 87 Wn. App. 579, 601-02, 943 P.2d 350 (1997).

The Chartiers simply assert that they "were damaged" by the four types of defamatory claims the Carlsons made. They cite to no authority in support of this element, and cite to only two portions of the record: (1) a segment of a proposed order and a certificate of service, and (2) an answer to an interrogatory.

We could deny this assignment of error simply because it is rankly conclusory. See RAP 10.3(a)(6) (which requires an appellant to provide "argument in support of the issues presented for review, together with citations to legal authority and references to relevant parts of the record."); see also Brownfield v. City of Yakima, 178 Wn. App. 850, 876, 316 P.3d 520 (2013) ("We do not consider conclusory arguments that are unsupported by citation to authority. Passing treatment of an issue or lack of reasoned argument is insufficient to merit judicial consideration.") (citations omitted).

The Chartiers' response fares no better even if we were to review the two citations to the record referenced above and attempt to construct an argument on their behalf. The former citation to random portions of the record is bereft of any discussion of damages. Even assuming there is inadvertent mis-citation, "[i]t is not the responsibility of this court to attempt to discern what it is appellant may have intended to assert that might somehow have merit." Port Susan Chapel of the Woods v. Camping Club, 50 Wn. App. 176, 188, 746 P.2d 816 (1987).

First, the discovery answer is not responsive to or provided in support of the

Chartiers' defamation claim, but to a later distinct cause of action. Second, even if we chose to rely on the verbatim answer to the appropriate interrogatory, the Chartiers' declared in substantive part only the following:

> The harm inflicted is on-going. The damages include, but are not limited to the following; Trip to hospital. Special damages. The Carlsons believe that they and [the club] are one. Because, we refused to put up with Ken's repeated threats to kill Tom and responded to them when Tom resigned from the board and I would no longer work on the Spokesman[2] and would no longer run for secretary. They intended to drive Tom and I out of [the club] and harm us with the people in the *classic* car club community, its advertisers and the people to whom the Spokesman was distributed. Tom and I had invested a lot of time and energy in [the club]. It was a lynch pin of our social lives. Now acquaintances approached us on the street and asked us if we were suing the club. We are shunned. New club members during the meetings when the Carlson contend that we are suing the club, which is a lie, vilify and belittle us. At antique car club meetings, people shun us and stare at us. We have been humiliated, shamed and embarrassed by the actions of Ken and Darlene and their lies.

In other words, viewing the facts in the light most favorable to them as the non-moving party, the Chartiers have claimed they were damaged by a trip to a hospital and socially.

Without seeking to minimize the effects of the conflict on the Chartiers' personal lives as they have subjectively experienced it, we conclude they did not raise a genuine issue of material fact that they suffered any compensable actual damages caused by the Carlsons' actions. There is no support, accounting or explanation for the actual damages caused by a, possibly singular, trip to the hospital, or linking on a nonconclusory basis the Chartiers' perceived loss of their social life with allegedly defamatory statements by the Carlsons. The Chartiers

---

[2] The Spokesman is a newsletter of the club.

5

also fail to put forth evidence that these harms were "factually caused by the defendant[s'] wrongful conduct." Schmalenberg, Inc., 87 Wn. App. at 601-02. To survive the Carlson's summary judgment motion, the Chartiers must provide "specific" evidence, and not mere "argumentative assertions." Bucci v. Nw. Tr. Servs., Inc., 197 Wn. App. 318, 326, 387 P.3d 1139 (2016). They fail to do so.

In turn, because a plaintiff bringing a defamation action must meet every element of such a claim, their failure to show a genuine issue of material fact on the element of damages is fatal. Mohr, 153 Wn.2d at 822. Thus, the trial court did not err by granting summary judgment to the Carlsons on defamation.

B. Invasion of Privacy

Washington recognizes a common law right to privacy. Reid v. Pierce County, 136 Wn.2d 195, 206, 961 P.2d 333 (1998). Washington bases its right of action for violation of this right on the Restatement (Second) of Torts § 652D (AM. L. INST. 1977), which generally states that:

> One who gives publicity to a matter concerning the private life of another is subject to liability to the other for invasion of his privacy, if the matter publicized is of a kind that
>
> > (a) would be highly offensive to a reasonable person, and
> > (b) is not of legitimate concern to the public.

White v. Town of Winthrop, 128 Wn. App. 588, 593-94, 116 P.3d 1034 (2005) (quoting Reid, 136 Wn.2d at 206).

By way of taxonomy, "[t]he protectable interest in privacy is generally held to involve four distinct types of invasion: intrusion, disclosure, false light and appropriation." Eastwood v. Cascade Broad. Co., 106 Wn.2d 466, 469, 722 P.2d 1295 (1986). "These four privacy torts are related in that 'each involves

6

interference with the interest of the individual in leading, to some reasonable extent, a secluded and private life, free from the prying eyes, ears and publications of others.'" Id. (quoting RESTATEMENT (SECOND) OF TORTS § 652A, cmt. b., at 377 (1977)).

In support of their claim for invasion of privacy, the Chartiers present theories of misappropriation and false light. We address each in turn.

a. Misappropriation

"The elements of a claim of misappropriation of a persona are: (1) the defendant's use of the plaintiff's identity, (2) the appropriation of plaintiff's name or likeness to defendant's advantage, commercially or otherwise, (3) lack of consent, and (4) resulting injury." Aronson v. Dog Eat Dog Films, Inc., 738 F. Supp. 2d 1104, 1113 (W.D. Wash. 2010) (citing RESTATEMENT (SECOND) OF TORTS §§ 652A-E (1977)); see also Roush v. Akal Sec., Inc., No. 2:17-CV-358-RMP, 2020 WL 5996424, at *5 (E.D. Wash. Oct. 9, 2020) (court order) (applying Restatement (Second) of Torts § 652C (Am. L. Inst. 1977) to a claim of appropriation of likeness in applying Washington law).

The Chartiers claim the Carlsons used the Chartiers' likenesses without their permission on a "website" called the club's "Bitchers."[3] The Chartiers offer

---

[3] While the Chartiers refer in their brief to the "Bitchers" communication as a "website," it appears that they are referring to a Facebook "page" or "group" on Facebook's platform.; see also, Differences between Profiles, Pages and Groups on Facebook, FACEBOOK, https://www.facebook.com/help/337881706729661 [https://perma.cc/EJ7M-LQ5Y]. It stands to reason, then, that any use of their likeness in this context may simply have been the display of their own self-selected profile picture or avatar associated with their Facebook account which was added to the group.

no authority in support of this argument and cite to three pages of the record, none of which includes evidence of the alleged appropriated image(s) or likeness(es), of the "website" where the Carlsons allegedly used the images, or of how the Carlsons obtained or used the images or injuries suffered. In short, setting aside conclusory statements, every element of this claim is lacking. Aronson, 738 F. Supp. 2d at 1113 (citing RESTATEMENT (SECOND) OF TORTS §§ 652A-E (1977)).

In response, on appeal, the Chartiers simply assert that this claim needs "further discovery to determine where the Carlsons obtained the picture." We take this statement as a concession that the Chartiers currently lack the evidence of at least one element of the claim; appropriation. "[T]o defeat a motion for summary judgment, a party must present more than . . . conclusory statements." SentinelC3, Inc. v. Hunt, 181 Wn.2d 127, 140, 331 P.3d 40 (2014).

What's more, the Chartiers had multiple opportunities to offer evidence supporting this cause of action and did not do so. Indeed, on the day of the summary judgment hearing, counsel for the Chartiers represented to the court that, after conferring his clients, they were "prepared to go forward" without additional discovery, knowing the court would not consider his untimely substantive response.

Thus, we conclude the trial court did not err by granting the Carlsons' motion for summary judgment on the Chartiers' claim of misappropriation of their likenesses.

b. False Light

As to the other proffered basis for their invasion of privacy claim, "a false

8

light claim arises when *publicity* is given to 'a matter that places another in a false light if (a) the false light would be highly offensive to a reasonable person and (b) the actor knew of or recklessly disregarded the falsity of the publication and the false light in which the other would be placed.'" Emeson v. Dep't of Corr., 194 Wn. App. 617, 639, 376 P.3d 430 (2016) (quoting Eastwood, 106 Wn.2d at 471) (emphasis added).

Under the Restatement (Second) of Torts, publicity "means that the matter is made public, by communicating it to the *public at large*, or to so many persons that the matter must be regarded as *substantially certain to become one of public knowledge*." Emeson, 194 Wn. App. at 638 (quoting RESTATEMENT (SECOND) OF TORTS § 652D cmt. a) (emphasis added). Further, "it is not an invasion of the right of privacy . . . to communicate a fact concerning the plaintiff's private life to a single person or *even to a small group of persons*." RESTATEMENT (SECOND) OF TORTS § 652D cmt. a. (emphasis added). "'[A]ny publication in a newspaper or a magazine, even of small circulation, or in a handbill distributed to a large number of persons, or any broadcast over the radio, or statement made in an address to a large audience, is sufficient to give *publicity* within the meaning of the term as it is used in this Section. The distinction, in other words, is one between private and public communication.'" Virgil v. Time, Inc., 527 F.2d 1122, 1126 (9th Cir. 1975) (quoting RESTATEMENT (SECOND) OF TORTS § 652D (AM. L. INST., Tentative Draft No. 21, 1975)) (emphasis added).

The Chartiers argue simply that the "Carlson publication of the falsehoods/Misrepresentations about the Chartiers hurt them very much" and they

cite to the same discovery response discussed above. Viewing this single citation in the light most favorable to the Chartiers given the summary judgment posture of the case, it merely makes passing reference to the club's newsletter, the Spokesman, and its readers. Accordingly, summary judgment on the Chartiers' claim of false light is appropriate because they failed to provide evidence of the essential element of "publicity." There is no evidence in the record of the club's size or the extent of the Spokesman's readership, which could create a genuine issue of material fact that the newsletter communicated to the public at large, or "to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." Emeson, 194 Wn. App. at 638.

In fact, the Chartiers do not provide evidence that the Carlsons' conduct underlying this cause of action was public in any sense. While the Spokesman newsletter is a *publication*, there is no evidence it is publicly available or publicly distributed. Id. There is no genuine issue of material fact as to whether Carlsons' statements met the publicity element of the cause of action of false light.

C.    Intentional Infliction of Emotional Distress

To prevail on a claim of intentional infliction of emotional distress, a plaintiff must prove three elements: "(1) extreme and outrageous conduct, (2) intentional or reckless infliction of emotional distress, and (3) *severe* emotional distress on the part of the plaintiff." Robel v. Roundup Corp., 148 Wn.2d 35, 51, 59 P.3d 611 (2002) (quoting Dicomes v. State, 113 Wn.2d 612, 630, 782 P.2d 1002 (1989)) (emphasis added). Severe emotional distress must be more than "transient and trivial emotional distress," which is "a part of the price of living among people."

10

Kloepfel v. Bokor, 149 Wn.2d 192, 198, 66 P.3d 630 (2003) (quoting RESTATEMENT (SECOND) OF TORTS § 46 cmt. j.). A plaintiff's testimony that they were angry, afraid, or sad without "evidence regarding the intensity of [the] feelings or their duration" does not "create a question of fact as to whether [the plaintiff] suffered *severe* emotional distress." Sutton v. Tacoma School Dist. No. 10, 180 Wn. App. 859, 872, 324 P.3d 763 (2014) (emphasis added).

Even assuming arguendo the Carlsons' conduct was extreme and outrageous, and inflected intentionally or recklessly to create emotional distress, the Chartiers do not raise a genuine issue of material fact as to whether the conduct actually resulted in "*severe* emotional distress." Kloepfel, 149 Wn.2d at 195 (emphasis added).

Although they do not make a reasoned argument specifically to this element, the Chartiers do contend that the Carlsons' conduct deprived them of the "satisfaction of their participation in the club and with its members, which were a major part of their lives" and "sent Tom to the hospital emergency room for his heart." The Chartiers, however, put forth no evidence that the loss of a social outlet resulted in *severe* emotional distress or that Tom's trip to the emergency room resulted from *severe* emotional distress attributable to the Carlsons' conduct. On the contrary, each of the Chartiers admitted that they did not receive "any" treatment for the emotional damage they alleged to have suffered.

While the Chartiers make a showing of some level of emotional distress in stating "we have been humiliated, shamed and embarrassed by the actions of [the Carlsons]," this evidence, as in Sutton, fails to establish the intensity and duration

of the Chartiers' emotional distress. Sutton, 180 Wn. App. at 872 (concluding no genuine issue of material fact for severe emotional distress because "there is no evidence regarding the intensity of these feelings or their duration.").

In short, the Chartiers do not provide any evidence that their emotional distress rose beyond "transient and trivial emotional distress" nor do they meet their burden of establishing a genuine issue of material fact as to any claimed severe emotional distress. Kloepfel, 149 Wn.2d at 198. Thus, the court did not err in granting summary judgment on that claim.

D.     Negligent Infliction of Emotional Distress

Where a suit is based on negligent infliction of emotional distress "'we test the plaintiff's negligence claim against the established concepts of duty, breach, proximate cause, and damage or injury.'" Snyder v. Med. Serv. Corp. of E. Wash., 145 Wn.2d 233, 243, 35 P.3d 1158 (2001) (quoting Hunsley v. Giard, 87 Wn.2d 424, 434, 553 P.2d 1096 (1976)).

As to the final element, to prevail, the "plaintiff must demonstrate objective symptoms of emotional injury." Colbert v. Moomba Sports, Inc., 163 Wn.2d 43, 50, 176 P.3d 497 (2008). To show "objective symptomology" "a plaintiff's emotional distress must be susceptible to medical diagnosis and proved through medical evidence." Hegel v. McMahon, 136 Wn.2d 122, 135, 960 P.2d 424 (1998). "The tort of negligent infliction of emotional distress is a limited, judicially created cause of action that allows a family member a recovery for 'foreseeable' intangible injuries caused by viewing a physically injured loved one shortly after a traumatic accident." Colbert, 163 Wn.2d at 49 (quoting Hegel, 136 Wn.2d at 125-26).

The Chartiers argue they established a prima facie case for this tort. They argue in some depth for the existence of a duty and its breach. But nowhere do they argue that a genuine issue of material fact exists as to "damage or injury.'" Snyder, 145 Wn.2d at 243.

Even assuming, as the trial court found, that the Carlsons owed the Chartiers a duty to refrain from conduct that would be foreseeably harmful (and proximately caused harm), the Chartiers do not present objective symptomology of the harm. Hegel, 136 Wn.2d at 135. There is no evidence of an objective medical impact on Tom arising from the conflict between the couples. Instead, again, the record shows that each of the Chartiers said they received no medical treatment for emotional damages. And, even more specifically, on May 1, 2021, when Tom visited the hospital for heart palpitations and shortness of breath, he declined to specify any life stressors related to the club or its members. This evidence is unrebutted, unexplained, and the Chartiers fail to put forth evidence to create any genuine issue of material fact on this element of the claim.

In turn, the Chartiers failed to "make a showing sufficient to establish the existence" of an essential element to their case, which they would bear the burden of proving at trial. Young, 112 Wn.2d at 225. Therefore, the trial court did not err by granting summary judgment on this claim.[4]

---

[4] Twice the trial court imposed discovery sanctions on the Chartiers for untimely and incomplete discovery, awarding the Carlsons over $3,000 in attorney fees and sanctions. The Chartiers did not designate, however, either of these orders in their notice of appeal. They simply assigned error and argued the merits in its opening brief. RAP 2.4 carefully enumerates the scope of our review and the Chartiers nowhere explain why we should review these undesignated orders despite their

### III.  CONCLUSION

We affirm the trial court.

Díaz, J.

WE CONCUR:

Birk, J.

Hazel, ACJ

---

failure to follow our rules of procedure.  Thus we will not review this assignment of error.  RAP 2.4(a) ("The appellate court will, at the instance of the appellant, review the decision or parts of the decision designated in the notice of appeal . . .").